## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

**\* \* \* \* \* \* \* \* \* \***

IN RE:

**HARRY D. SMALL**                                          **CHAPTER 7**
**KELLIE R. SMALL**

                                                            **CASE NO. 08-52114**

**DEBTORS**


        **HARRY D. SMALL**                              **PLAINTIFFS**
        **KELLIE R. SMALL**

        **VS.**                              **ADVERSARY NO. 10-5111**

**UNIVERSITY OF KENTUCKY**
**FEDERAL CREDIT UNION**                              **DEFENDANT**

---

### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**COME NOW** the Plaintiffs, by and through counsel, in response to the motion for summary

judgment filed by the University of Kentucky Federal Credit Union and in support thereof state as

follows:

1.      The Defendant, University of Kentucky Federal Credit Union, filed a motion for

Summary Judgment on April 12, 2011.

2.      Summary judgment in favor of the Defendants is not warranted at this time because the

Defendants have not met the requirements for meeting the summary judgment standard as described in

the attached Memorandum of Law.

3.      Summary judgment in favor of the Plaintiffs is warranted on particular matters as

described in the attached Memorandum of Law.

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT**

### STATEMENT OF THE CASE

1.      In January 2002, Plaintiff Harry Small obtained an auto loan from the University of Kentucky Federal Credit Union.

2.      In 2007, Plaintiff Harry Small defaulted on his auto loan and overdrew his share account with the Credit Union.

3.      On August 19, 2008, the Plaintiffs filed a bankruptcy petition and described the auto loan debt in the schedules to the petition.  A true and accurate excerpt from the petition showing the debt is attached hereto as Exhibit A.

4.      The Credit Union received notice of the Plaintiffs' bankruptcy filing.  *See*, Credit Union Collection Notes at 4, attached hereto as Exhibit B.

5.      In December 2007, the Credit Union charged off the balance of Harry Small's auto loan. *See*, Diane Davis Affidavit ¶4, attached hereto as Exhibit C.  At this time, the Plaintiffs still had physical possession of the collateral for the auto loan.

6.      The Credit Union continued to collect against the charged off debt through a garnishment of Harry Small's wages from January 2008 until the filing of the Plaintiffs' bankruptcy petition.  *See*, Exh B, at 4-6.

7.      On November 25, 2008, this Court entered an order of discharge regarding the Plaintiffs' debts.  *See*, Order of Discharge, attached hereto as Exhibit D.

8.      The Credit Union received notice of the Plaintiffs' discharge.  *See*, Exh B, Credit Union Collection Notes at 4.

9.      As of the date of discharge, the Smalls still possessed the collateral for the auto loan with the Credit Union.

10.      The collateral for the auto loan was recovered by the Credit Union in February 2009. *See*, Exh B, Credit Union Collection Notes at 3.

11.      In March 2009, the Credit Union sold the collateral for the auto loan at a private sale. *See*, Exh B, Credit Union Collection Notes at 1.

12.      The Plaintiffs allege that the Credit Union applied the proceeds of this sale to the Plaintiffs' charged off debt.  The Plaintiffs allege that this sequence of events demonstrates that a charged off debt can still be legally collected.

13.      Following the entry of the discharge order, the Credit Union reported the overdrawn share account and auto loan as "charged off" to Experian.  *See*, Exh C, Affidavit of Diane Davis ¶6.

14.      "Charged off" is not an accurate description of the Plaintiffs' debts because a charged off debt is still legally collectible, could be sold to a third party collector, or could be deemed collectible at a later date.  Only the expiration of the statute of limitation regarding collection would make the debt uncollectible, absent the entry of an order of discharge for the debt from a United States Bankruptcy Court.  In fact, the Credit Union collected a portion of the Plaintiffs' debt after they charged it off.

15.      Because the Plaintiffs retained personal liability for the Credit Union debts, those debts were included in their bankruptcy petition.  The Plaintiffs' personal liability was discharged in bankruptcy, so the only accurate credit reporting description following notification of the entry of a discharge order is "discharged in bankruptcy."  The Credit Union displays a blatant disregard of the bankruptcy court's entry of the Plaintiffs' discharge order in persisting to describe the debt as "charged off."

16.     Because furnishers of credit reporting information are required to reinvestigate disputes of credit report entries, the Plaintiffs made several disputes of the Credit Union's entry on their Experian credit report.  On or about March 9, 2010 Smalls disputed the inaccurate Credit Union entry through an online tool provided by Experian.

17.     On or about April 7, 2010, the Plaintiffs received the results of their online dispute of the Experian entry for the Credit Union auto loan.  This dispute resulted in the Credit Union indicating that no change was necessary to the entry.

18.     On or about April 20, 2010, the Debtors disputed all creditor entries on their Experian credit report where creditors with discharged debts were reporting something other than a "0" balance and the notes "discharged in bankruptcy."

19.     On or about April 29, 2010, Plaintiff received a credit report update from Experian.  The Credit Union verified the auto loan entry as charged off.  The account is listed as having been verified in March 2010 and as being last reported in April 2010, commensurate with the timing of the dispute.  The listing also states a balance dur of $2,397.00.  *See*, Harry Small credit report dated 4/29/2010, at 4, attached hereto as Exhibit E.


## ARGUMENT

### I.   KELLIE SMALL IS A PARTY TO THIS ACTION BECAUSE SHE AND HER HUSBAND ARE AN ECONOMIC UNIT AND JOINTLY DAMAGED BY THE CREDIT UNION'S ACTIVITIES.

The Credit Union argues that Kellie Small must be dismissed from this action because she was never personally indebted to the Credit Union.  Plaintiff Kellie Small operates as an economic unit with her husband, Plaintiff Harry Small.  Their joint applications for credit are affected by the Credit Union's misreporting and they are jointly damaged by the reduction in Mr. Small's credit score.  The Plaintiffs concede that Kellie Small was never a member of the credit union and was never personally

indebted to the Credit Union.  However, since the Plaintiffs operate as an economic unit, Kellie

Small's earnings have been used to pay toward the Credit Union debts and Kellie Small is affected by

the credit reporting undertaken by the Credit Union because of the Plaintiffs' joint applications for

credit.  Kellie Small should not be dismissed from this action because she has been damaged by the

Credit Union's activities despite not being personally indebted to them in the past.

Federal Rule of Civil Procedure 56 is incorporated into the Federal Rules of Bankruptcy

Procedure via Rule 7056.  This rule holds that "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  The Credit Union has not established as a matter of law that Kellie Small has not

been damaged by its misreporting on Harry Small's credit report or that she has no standing to pursue a

claim against the Credit Union.  As a result, she cannot be dismissed as a party and the Court must

deny the Credit Union's motion for summary judgment on this issue.

## II.    THE CREDIT UNION IS A FURNISHER OF INFORMATION UNDER THE FCRA AND HAS A DUTY TO INVESTIGATE CREDIT REPORTING INFORMATION FOLLOWING A DISPUTE.

15 USC 1681a(t) defines financial institutions who are subject to the Fair Credit Reporting Act

and includes "a State or Federal credit union" as a financial institution.  The UK Federal Credit Union

is a financial institution under the Fair Credit Reporting Act.  The UK Credit Union is also a "furnisher

of information" under the Act.

15 U.S.C. § 1681s-2(b) requires a furnisher of information to investigate consumer disputes

following the receipt of notice of the dispute from a consumer credit reporting agency.  The relevant

portion of the statute is as follows:

> **(b) Duties of furnishers of information upon notice of dispute**
>   **(1) In general**
>     After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute

with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.


A furnisher's liability is predicated upon receive a notice pursuant to 1681i, which states in relevant part as follows:

(a) **Reinvestigations of disputed information**

(1) **Reinvestigation required**

(A) **In general**

Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

\* \* \* \* \* \* \* \* \*

(2) **Prompt notice of dispute to furnisher of information**

(A) **In general**

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

(B) **Provision of other information**

> The consumer reporting agency shall promptly provide to the person who
> provided the information in dispute all relevant information regarding the
> dispute that is received by the agency from the consumer or the reseller
> after the period referred to in subparagraph (A) and before the end of the
> period referred to in paragraph (1)(A).

A furnisher's duty to provide accurate information following a credit report dispute was recognized by a Kentucky court in the case of *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky. 2003). The District Court for the Western District of Kentucky found that "§ 1681s-2(b) does allow a consumer to bring a private cause of action against a furnisher of credit information for either negligent, § 1681o, or willful, § 1681n, violations of the FCRA." *Id.*, at 783.

In the case at bar, the Plaintiffs notified Experian of its dispute regarding the Credit Union debts many times, as stated in their affidavits in support of their motion to re-open this case. The Credit Union does not deny receiving the credit report disputes, instead it claims that the information reported to the credit reporting bureaus was accurate since the debts were charged off prior to the entry of the discharge order. To restate, the Credit Union does not deny being subject to 1681s-2, but instead relies on its reporting as accurate as a basis for the Court's judgment. The Credit Union is in error as a matter of law on this point, as outlined in the next section of this Memorandum of Law.

## III. THE ONLY ACCURATE DESCRIPTION OF THE PLAINTIFFS' DEBT WITH THE CREDIT UNION IS "DISCHARGED IN BANKRUPTCY."

The Credit Union admits that it reports Harry Small's auto loan and share account as "charged off." The Credit Union claims that such reporting is accurate because it charged off the account before the discharge order was entered in the Smalls' bankruptcy case. *See*, Defendant's Memorandum at 5. The Credit Union claims that since "charged off" is accurate, the Plaintiffs do not make out a successful FCRA claim.

The Credit Union's ongoing reporting of the Plaintiffs' debt as "charged off" is inaccurate

because a charged off debt is still legally collectible and a discharged debt is not. A "charge off" of a debt is an accounting notation that a creditor uses in order to take a tax deduction for debt that it believes it cannot profitably collect. However, that is not a legal disposition of the collectability of the debt. A large market for charged off debt exists in this country and it is a common practice among creditors to sell charged off debt to third party collectors for pennies on the dollar.

When a creditor charges off a debt, it may assign its rights in the debt to someone else so that they may attempt to collect it. The only legal dispositions of a debt that make it uncollectible are the expiration of the statute of limitations for the debt's collection or the discharge of the debt through bankruptcy. There is no dispute in this case that the creditor received notice of the Plaintiffs' case filing or discharge. *See*, Defendant's response to first interrogatories at 3, attached hereto as Exhibit F; Exh B, Collection Notes at 4. There is no dispute in this case that the Defendant received and responded to the credit report disputes initiated by the Plaintiffs. *See*, Defendant's responses to second interrogatories at 2, attached hereto as Exhibit G.

The Credit Union's main contention is that the accurate description of the Plaintiffs' debt is "charged off" despite the discharge of the debt with this Court's discharge order entered on November 25, 2008. Such a contention goes straight to the heart of this Court's ability to adjudicate the collectability of a debt. The Plaintiffs' debt with the Credit Union was not finally disposed of when the Credit Union charged off the balance of the auto loan in December 2007. In fact, the Plaintiffs were still in possession of the collateral for the auto loan at the time of the charge off and the Credit Union garnished Harry Small's wages for the auto loan after the December 2007 charge off until the filing of the Plaintiffs' bankruptcy petition in August 2008. *See*, Exh B, Credit Union Collection Notes at 4-6. The Plaintiffs surrendered the vehicle to the Credit Union in February of 2009 and the vehicle was sold at auction in March of 2009. *See*, Exh B, Collection Notes at 3-4. It is not disputed that the Credit Union collected money from the Plaintiffs after it charged off the auto loan. This sequence of events is

itself evidence of the principle that a charged off debt can still be collected despite how a creditor

accounts for the debt on its books through the use of "charging off."  This sequence of events

demonstrates that a "charge off" does not affect a debtor's personal liability for a debt.  The only legal

events that affect a debtor's personal liability for a debt are the expiration of the applicable statute of

limitations for collection activity or the entry of a discharge of personal liability through bankruptcy.

Although the Credit Union charged off the debt prior to the entry of the Plaintiffs' order of discharge,

the personal liability of the Plaintiff Harry Small was not extinguished by the charge off and for that

reason the Credit Union debts were scheduled in the Plaintiffs' petition.  The Plaintiffs' personal

liability for their debts was addressed through the United States Bankruptcy Court for the Eastern

District of Kentucky and their scheduled debts, including the Credit Union debts, were discharged.

As the order of discharge received by the Credit Union states, "The chapter 7 discharge order

eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts

are discharged if the debt existed on the date the bankruptcy case was filed."  In the case at bar, the

Plaintiffs' debts to the Credit Union existed upon the date of filing (August 19, 2008) and as a result,

those debts were discharged with the entry of the discharge order on November 25, 2008.  The Credit

Union's accounting for those debts is irrelevant to the legal status of the debt as discharged.  The Credit

Union's argument that "charged off" is an accurate description of the status of the debt must fail

because charged off debts are still legally collectible and the Plaintiffs' auto loan with the Credit Union

was discharged and therefore no longer collectible.  The Credit Union admits to having received the

order of discharge entered in the Plaintiffs' case and to having received the credit report disputes

regarding the reporting of these debts.  *See*, Exh B, Collection Notes at 4; Exh G, Defendant's

Response to Second Discovery at 2.  It cannot claim ignorance of the disposition of the debts by this

Bankruptcy Court nor can it claim ignorance of the Plaintiffs' disputes of the status of the debts.  The

only explanation available to explain the description of the debt as "charged off" is a policy to ignore

orders of discharge received from the United States Bankruptcy Court when the Credit Union has

already charged off a debt.  Because the Credit Union admittedly ignores the impact of a discharge

order on its charged off debts, it violates the accuracy requirements of the FCRA as a matter of law and

is liable to the Plaintiffs for damages.

Federal Rule of Civil Procedure 56 holds that "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."   In the case at bar, there is no dispute that the Credit Union charged off

the Plaintiffs' debts and that the Credit Union continued to report the debts as "charged off."  It is not

disputed that the Credit Union collects charged off debts.  It is not disputed that the effect of a

discharge order is to declare a debt uncollectable.  The Credit Union's argument that "charged off" is

an accurate description of the status of the debt must fail as a matter of law because charged off debts

are still legally collectable and the Plaintiffs' auto loan and share account with the Credit Union were

discharged and therefore no longer collectable.  In addition, the Court mist find that the Credit Union

violated the FCRA because "charged off" is an inaccurate description of a debt discharged through

bankruptcy as a matter of law.


## IV.   THE PLAINTIFFS' CLAIMS UNDER THE FCRA PROVIDE FOR ACTUAL AND PUNITIVE DAMAGES.

The Fair Credit Reporting Act states its guidelines for damages at 15 U.S.C. §§ 1681n and

1681o.  Those statutes state in relevant part:

> **1681n [Civil liability for willful noncompliance]  (a) In general**
> Any person who willfully fails to comply with any requirement imposed under
> this subchapter with respect to any consumer is liable to that consumer in an
> amount equal to the sum of—
> (1)
> > (A) any actual damages sustained by the consumer as a result of the failure or
> > damages of not less than $100 and not more than $1,000; or
> > (B) in the case of liability of a natural person for obtaining a consumer report
> > under false pretenses or knowingly without a permissible purpose, actual

damages sustained by the consumer as a result of the failure or $1,000,
whichever is greater;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section,
the costs of the action together with reasonable attorney's fees as determined by
the court.

**1681o [Civil liability for negligent noncompliance] (a) In general**
Any person who is negligent in failing to comply with any requirement imposed
under this subchapter with respect to any consumer is liable to that consumer in an
amount equal to the sum of—
(1) any actual damages sustained by the consumer as a result of the failure; and
(2) in the case of any successful action to enforce any liability under this section,
the costs of the action together with reasonable attorney's fees as determined by
the court.

These statutes provide for the recovery of actual damages, punitive damages, costs, and attorney

fees.  The nature of the damages to the Plaintiffs is in a reduced credit score based on the Credit

Union's misreporting, the cost of credit monitoring services, court costs, and attorney fees.  In addition,

the above statutes provide for the awarding of punitive damages, an element of the Plaintiffs' damages

which must be determined by the Court.  The Plaintiffs allege that punitive damages are justified in this

case based on the Credit Union's admittedly willful disregard of the discharge order entered in this

case.  Willfulness under the FCRA requires a showing that the defendant acted in reckless disregard of

the law.  *Safeco Ins. Co. v. Burr*, 127 S.Ct. 2201, 2215 (2007).

The Defendant in this case has disregarded the discharge order entered in the Plaintiffs'

bankruptcy case and has also ignored basic principles of the law in its reporting of the Plaintiffs' debts

as charged off.  Since the Credit Union collects charged off debts, it cannot logically claim that that a

charged off debt is not collectible or that "charged off" accurately describes a debt discharged through

bankruptcy.  Further, the only possible reason the Credit Union could have for continuing to report a

discharged debt as a charge off is to damage its former debtors' credit scores as retaliation for obtaining

a discharge of debt.

The Defendant's claim that the Plaintiffs' cannot prove any damages must fail because the

Plaintiffs' have alleged that they have been damaged by the Credit Union's reporting, but those

damages include intangibles such as loss of credit reputation.  The Plaintiffs have alleged damages in a

reduced credit score based on the Credit Union's misreporting, the cost of credit monitoring services,

court costs, and attorney fees.  The Plaintiffs ask that the Court conduct a hearing to determine an

appropriate award of damages.

## V.     THE PLAINTIFFS' KCPA CLAIMS APPLY ONLY TO THOSE ACTIONS OF THE CREDIT UNION UNDERTAKEN PRIOR TO THE PLAINTIFFS' CREDIT REPORT DISPUTES.

The case cited by the Defendant as support for preemption of the Plaintiffs' KCPA claims is

used in a misleading fashion.  In *Stafford v. Cross Country Bank*, the court held that the Bank's

activities prior to the credit report disputes were not preempted by the FCRA.  *Stafford v. Cross

Country Bank*, 262 F.Supp.2d 776, 793 (W.D. Ky. 2003).  The FCRA claims in this case apply only to

the Credit Union's actions following the credit report dispute process defined in 15 U.S.C. 1681i.  The

Plaintiffs allege that the Credit Union violated the Kentucky Consumer Protection Act because it was a

false and misleading act to continue reporting the Plaintiffs' debts as "charged off" after receiving

notice of the bankruptcy discharge order based on the legal fact that charged off debts are still

collectible while discharged debts are not.

KRS 367.170 states that "Unfair, false, misleading, or deceptive acts or practices in the conduct

of any trade or commerce are hereby declared unlawful."  The only accurate description of the

Plaintiffs' debts with the Credit Union is "discharged in bankruptcy" because charged off debts are still

collectible.  The Credit Union's ongoing reporting of the Plaintiffs' debts as "charged off" prior to

receiving any credit report dispute notifications is a misleading practice.

Because the Credit Union admittedly ignores the impact of a discharge order on its charged off

debts, it violates the Kentucky Consumer Protection Act as a matter of law and is liable to the Plaintiffs

for damages.    Federal Rule of Civil Procedure 56 holds that "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Credit Union has not established as a matter of law that the Plaintiffs' KCPA claims are preempted and accordingly the Court cannot dismiss those claims.  However, the Plaintiffs have produced evidence showing that the Credit Union's position is based on misstatements of the law and ask that the Court find for the Plaintiffs on their KCPA claims.

## VI.    THE CREDIT UNION'S REPORTING OF THE PLAINTIFFS' DEBTS VIOLATES THE DISCHARGE INJUNCTION BECAUSE THE REPORTING IDENTIFIES THE DEBT AS COLLECTIBLE WHEN IN FACT IT IS NOT.

The purpose of a discharge order from a debtor's point of view is to notify a set of creditors that the debtor's scheduled debts are no longer collectible.  This declaration of non-collectability is what guarantees that debtors will receive a fresh financial start following the discharge.  The reporting of a discharged debt as a "charge off" frustrates the fresh start because it has a greater negative effect on a debtor's credit score than the notes "discharged in bankruptcy."  More importantly, the notation of a discharged debt as "charged off" gives the impression to other potential lenders that the debt at issue was not affected by the bankruptcy information that shows in the "public records" section of a credit report.  At worst, the reporting of a discharged debt as a "charge off" amounts to lying in wait until the debtor needs an accurate credit report and the entry can be used as a form of coercion for collecting the debt.

The Credit Union claims that the Bankruptcy Court's "discharge order did not alter the fact that the Credit Union had charged off Mr. Small's former debt approximately one year before the Plaintiffs filed their petition in this case."  *See*, Defendant's motion for summary judgment at 6.  Even though the Credit Union charged off the debt prior to the filing of the Plaintiffs' bankruptcy petition, the charge off action does not alter the fact that the Plaintiffs' personal liability for their debts was only

extinguished with the entry of the discharge order in the underlying bankruptcy case.  It also does not

alter the fact that the Credit Union collected against this charged off debt after conducting the charge

off.  This is so because a charged off debt is still a legally collectible debt.

In evaluating the Credit Union's argument it is relevant to consider that despite charging off the

auto loan debt in December of 2007, the Credit Union continued to collect from the Plaintiffs through

wage garnishment until the Plaintiffs filed their bankruptcy petition in August of 2008.  *See*, Exh B,

Collection Notes at 4-6.  This activity is in contradiction to the Credit Union's explanation as to why it

believes "charged off" is more accurate than "discharged in bankruptcy" when describing the

Plaintiffs' debts.  The Credit Union responded that, "'Charged off' accurately describes the last action

taken by the Credit Union with regard to Harry Small's former indebtedness to the Credit Union."  *See*,

Exh G, Response to Second Interrogatories, at 3.  That statement is not accurate because the Credit

Union sued Harry Small for non-payment and garnished his wages for eight months following the

charge off.  *See*, Exh B, Collection Notes at 4-6.  Further, the Credit Union did not dispose of the

collateral for this debt until March 2009.  *See*, Exh B, Collection Notes, at 1.

By its own acts and admissions, the Credit Union demonstrates that a charged off debt may still

be collected.  The only legal actions which alter the collectability of a debt are the expiration of the

applicable statute of limitations or the discharge of the debt through bankruptcy.  The Credit Union

demonstrates from its own admitted actions that it collects debts that it has charged off.

11 U.S.C. § 524 "operates as an injunction against the commencement or continuation of an

action, the employment of process, or an act, to collect, recover or offset any such debt as a personal

liability of the debtor[.]"  By its own admission and evidence obtained through discovery, the Credit

Union collects charged off debts.  The Credit Union's Asset Recovery Manager has stated under oath

that the Credit Union charged off the auto loan in December 2007.  *See*, Exh C, Affidavit of Diane

Davis at ¶4. The Credit Union's collection notes for the Plaintiffs' accounts state that garnishment

checks were received beginning in January 2008 and continued until August 2008.  *See*, Exh B,

Collection Notes, 4-6.  The Credit Union's collection notes also demonstrate that the Credit Union

received notice of the Plaintiffs' petition filing and discharge order.  *Id*., at 4.  By its own admission,

the Credit Union reports discharged debts as charged off to credit reporting agencies and considers that

reporting to be accurate.  *See*, Defendant's memorandum of law at 2.  The Credit Union admittedly

ignored the discharge order entered in this case because it sees its accounting practices as more

significant than the orders of this Court regarding the disposition of debts.

   The Plaintiffs do not dispute that the Credit Union charged off their debts with the Credit

Union.  The Plaintiffs' argument is that a charge off is an accounting activity that does not affect the

legal collectability of the debt—that is, a charged off debt is still a collectible debt but a discharged

debt is not.  In addition, the Plaintiffs argue that the discharge order in this case addressed the

Plaintiffs' debts with the Credit Union despite the fact that the Credit Union charged them off.  The

Credit Union seeks to make the discharge order entered in the Plaintiffs' bankruptcy case irrelevant to

the Plaintiffs' former debts with them.  The Credit Union's position questions the basic authority of

this Bankruptcy Court to determine the collectability of a debt.

   The discharge order entered by this court in the Plaintiffs' underlying bankruptcy case

discharged the Plaintiffs' personal liability for the Credit Union debts, despite the fact that the Credit

Union charged them off on its books.  Since the Credit Union collects charged off debts, it violates the

discharge order for the Credit Union to describe those debts as charged off because it indicates to

potential lenders that the debt is still legally collectible.

   Moreover, since the Credit Union collects charged off debts, the only purpose of continuing to

report the Plaintiffs' discharged debts as charged off could be to exert pressure on the Plaintiffs' to pay

the debt in order to get the credit report entry updated with more favorable information.  The credit

report for Harry Small attached as Exhibit E shows on page 4 that the balance on the Plaintiff's account

as of April 2010 was $2,397.00.

The Plaintiffs seek that the Credit Union be found in contempt of court for its violation of the discharge order entered in their underlying bankruptcy case. Courts in the Sixth Circuit have recognized that misreporting to credit reporting agencies can amount to a violation of the discharge order. In the case of *In re Lohmeyer*, 365 BR 746 (Banrk. N.D. Ohio 2007), the Court found that a creditor's reporting of a discharged debt as charged off can violate a debtor's discharge order without any overt collection activity, if the reporting amounts to coercion to pay the debt. *Id*., at 750. In the case at bar, the Credit Union has already demonstrated that it collects charged off debts, that it does not regard the discharge order as having any legal effect on the Plaintiffs' debts with them, and that as a result reporting the debts as "charged off" is accurate. As a result, summary judgment cannot be granted in the Credit Union's favor on any claim. In fact, the Plaintiffs have produced sufficient evidence to demonstrate the Credit Union's disregard for this Court's orders and that its position on the accuracy of "charged off" to describe discharged debts is erroneous as a matter of law.

WHEREFORE, the Plaintiffs request that the Court,

A.    Deny the Credit Union's Motion for Summary Judgment as to all issues;

B.    Find as a matter of law that a "charged off" debt is a collectible debt;

C.    Find that it is established as fact that the Credit Union collects charged off debts;

D.    Find that it is established as fact that the Credit Union received notice of the Plaintiffs' bankruptcy filing and bankruptcy discharge;

E.    Find that it is established as fact that the Credit Union received notice of the Plaintiffs' credit report disputes which triggered its duty to investigate under 15 U.S.C. § 1681s-2;

F.    Find that it is inaccurate as a matter of law to describe a debt discharged through bankruptcy as "charged off;"

G.    Find that it is inaccurate within the meaning of the FCRA to describe a discharged debt

as "charged off" following a credit report dispute by a debtor who has received a bankruptcy discharge;

H.      Find as a matter of law that it is a misleading act within the meaning of the Kentucky

Consumer Protection Act for a scheduled creditor to describe a discharged debt as "charged off"

following receipt of an order of discharge;

I.      Find that the Credit Union violated the Plaintiffs' discharge order to report a discharged

debt as "charged off" following the credit report disputes by the Debtor;

J.      Find the Credit Union in contempt for violating the discharge order entered in the

Plaintiffs' underlying bankruptcy case;

K.      Schedule a hearing for the determination of damages;

L.      And any further relief that the Court deems just.

Dated this the 19th of April, 2011.

/s/ Lesley A. Cayton
Lesley A. Cayton
*Friend & Associates, PSC*
P.O. Box 1488
Georgetown KY 40324
KBA# 93066
p: 859-317-1085
f: 502-614-4973
LesleyCaytonAtty@gmail.com
**Counsel for the Plaintiffs**

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion and a copy of the proposed Order have

been served this the 19th day of April, 2011, by electronic notice or by mailing same, postage prepaid, to

the Trustee and the US Trustee and all parties in interest.

**Distribution by CM/ECF to:**

U.S. Trustee
Chapter 7 Trustee James Rogan

Distribution by first class mail, postage prepaid:

UK Federal Credit Union                David Kennedy, CEO/President
2557 Sir Barton Way                    UK Federal Credit Union
Lexington KY 40509                     2557 Sir Barton Way
                                       Lexington KY 40509


William W. Allen
Gess Mattingly & Atchison, PSC
201 West Short Street
Lexington KY 40507-1269

                                       /s/ Lesley A. Cayton
                                       _____
                                       Attorney for the Debtors

EXHIBIT

A

B6D (Official Form 6D) (12/07)

In re    **Harry D. Small,**
    **Kellie R. Small**

Case No. _____

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br> **First South Credit** <br> **252 Edgewood Dr** <br> **Nicholasville, KY 40356** | | J | **vehicle lien** <br><br> **1994 BMW 525I** <br> **133,000 miles** <br><br> Value $                    **4,425.00** | | | | **5,200.00** | **775.00** |
| Account No. <br><br> **University of Kentucky FCU** <br> **2557 Sir Barton Way** <br> **Lexington, KY 40509** | | J | **2002** <br><br> **vehicle lien** <br><br> **1996 Chevrolet Suburban** <br> **transmission does not work** <br> **200,000 miles** <br> Value $                      **500.00** | | | | **5,000.00** | **4,500.00** |
| Account No. <br><br><br><br><br> | | | <br><br><br><br> Value $ | | | | | |
| Account No. <br><br><br><br><br> | | | <br><br><br><br> Value $ | | | | | |

| | | |
|---|---|---|
| **0**   continuation sheets attached | Subtotal <br> (Total of this page) | **10,200.00** \| **5,275.00** |
| | Total <br> (Report on Summary of Schedules) | **10,200.00** \| **5,275.00** |

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

**Collection Notes for Account 0000662852**

EXHIBIT

**B**

04/04/2011

**12/17/2010   7:59a  User 208  Loan 00**

**12/01/2010   10:03a  User 217  Loan 00**

**11/29/2010   3:50p  User 212  Loan 00**
rec notice fr BK court that mbr filed a
motion to reopen his BK in order to
dispute our c/o loan reporting, it was
granted for mbrs to be able to reopen
the case to pursue us for discharge
violations, will advise Diane

**04/15/2009   3:46p  User 28   Loan 00**
put file for 1996 Chevrolet Suburban in
image

**04/02/2009   8:45a  User 28   Loan 00**
recd ck from Adesa for sale of 1996
Chevrolet Suburban
Vehicle Sale          $600.00
Seller Fee            $120.00
Payoff Fee            $ 67.00
Mechanical Work-Labor  $ 20.00
Net Check Amount      $393.00

**03/26/2009   10:12a  User 28   Loan 00**
recd call from Heather Adesa bid of $600
for 1996 Chevrolet Suburban
discussed with Diane will accept bid of
$600 for 1996 Chevrolet Suburban

**03/19/2009   11:08a  User 28   Loan 00**
spoke with Angelina Adesa, 1996
Chevrolet Suburban went thru sell today
3/19/09 but no bid, will run again next
sell 3/26/09

**03/12/2009   9:25a  User 28   Loan 00**
recd call from Adesa Angelina a bid on
1996 Chevrolet Suburban in the amount of
$650.00
discussed with Diane Davis, will not
accept the bid of 650.00 and counter at
$1,000.00
Let Angelina know did not accept bid of
$650.00, countered at $1,000.00

**02/24/2009   10:15a  User 28   Loan 00**
less than 1 inch no charges

Total charges on repairs for Parts and
Labor $4,932.00

**02/24/2009  10:12a  User 28   Loan 00**
inoperable, Total charges $1,300, F Fend
RF Tire Worn, Total charges $120, R QTR
Panel Dents-Multiple less than 1 inch,
creased 3-6 inches Total charge $210,
REAR Bumper Rusty less than 1 inch, no
charges, REAR L Cargo Door Scratched 1-3
inches Inoperable LOCK N-OP, Total
charges $$210 and $250, RF DR Glass,
loose and MOTOR BAD Total charges $350,
RF DR Handle loose no charges, RF DR
Panel Dings Multiple less than 1 inch,
no charges, RF DR Panel Dings-Multiple

**02/24/2009  10:07a  User 28   Loan 00**
charge: $250, Int Sests LF, cut 3-6
inches, Total charges $100, Int Seats RF
cut 6-9 inches, Total charge $100, L
FEND LF Tire, Worn, Total charge $120, L
QTR Panel, Dents-Multiple 12+ inches,
Total charges $210, LF DR Glass, Loose,
Motor missing, Total charges $250, LF DR
Handle, broken, Total charges $250, LF
DR Lock Assy. broken, Total Charges $250
LF DR Mirror broken, Total charges $320,
LF DR PAnel Dings-Multiple less than 1
inch no charges, MECH Transmission

**02/24/2009   9:59a  User 28   Loan 00**
recd email of the from Adesa Lexington,
for the 1996 Chevrolet Suburban, Used
Vehicle Inspection Report:
Mileage: 184897
Total Chargeable Damage: $4,932.00
Front Hodd, Rusty 9-12 inches, Dents
Multiple 3-6 inches, Total Charges $280
Front Lower Valance Loose no charges,
Int Door Panel LF loose, Int LF int.
Door Handle missing, Total Charges $250
Int Power Steering, inoperable,no charge
Int RF Int Door Handle, broken, Total

**02/19/2009   9:05a  User 28   Loan 00**
recd certified card for J. James Rogan
Trustee for 1996 Chevrolet Suburban

**02/17/2009   1:03p  User 28   Loan 00**
recd in mail certified card from Harry
Small for 1996 Chevrolet Suburban
recd in mail certified card from Ginger
C Cord Atty for the 1996 Chevrolet
Suburban

**02/17/2009   1:02p  User 28   Loan 00**
tel Carolyn at Adesa, need to know what
the mileage and vehicle condition report
is for 1996 Chevrolet Suburban
Heather ret call about another matter at
cu, will ck on and let know the mileage
and vehicle condition report

**02/11/2009   3:04p  User 28**
Notice of Plan to Sell Property
with Bankruptcy.

**02/11/2009   2:57p  User 28**
Notice of Plan to Sell Property
with Bankruptcy.

**02/11/2009   2:51p  User 28**
Notice of Plan to Sell Property
with Bankruptcy.

**02/11/2009   2:19p  User 28   Loan 00**
tel and emailed Adesa Carolyn, to see if
auto was picked up, yes, was delivered
on 2/9/09, Asked to have the vehicle
condition report, Per Adesa can send the
CR vehicle condition report once it's
completed. It just arrived and we
haven't been able to complete it yet. I
will follow-up in a couple of days, I
will ck back with Adesa on Friday
2/13/09

**02/06/2009  10:17a  User 175  Loan 00**
Member tel wanted to know when auto will
be picked up , told him Monday 2/09/09
will leave keys under floor mat.

**02/04/2009  12:37p  User 28   Loan 00**
let Diane Davis know could not reach
anyone, per Diane set to be picked up by
Adesa on Monday 2/9/09
emailed Carolyn Adesa Auction to pick up
on Monday 2/9 with pick up from 103
Strawberry Ct., Nicholasville, KY 40356,
in driveway with keys

**02/04/2009  12:36p  User 28   Loan 00**
tel and emailed Adesa Carolyn, how much
to pick up and when can be picked up,
recd email back from Carolyn Adesa: It
shouldn't be any more thatn $60 to pick
this unit up. We should be able to get
it picked up by Monday.
discussed with Diane Davis, okay for
Adesa to pick up, to call #881-9567 to
let know will be picking up on Monday
2/9
tel 881-9567 disc
tel 881-5317 N/A

**02/04/2009  10:43a  User 217  Loan 00**
Clem to call Adessa and have them pick
up vehicle, member sd keys in it.  We
will sell for parts.

**02/04/2009  10:42a  User 217  Loan 00**
Member sd ph to reach him at is
881-9567.

**02/04/2009  10:13a  User 217  Loan 00**
He called back and ask if we were
abandon the vehicle,  told him no, then
he hung up.

**02/04/2009   10:12a   User 217   Loan 00**
Call from H Small asking when we will
pick up the vehicle, told him not
sure-since it was not running.  He ask
that we pick up by Friday, told him
would see if I can find someone to pick
it up.

**12/02/2008   1:12p   User 175   Loan 00**
Rec from US Bk Court, notice of
discharge in chp 7 case.

**11/26/2008   11:38a   User 208   Loan 00**

**10/20/2008   6:27p   User 217   Loan 00**

**10/14/2008   3:25p   User 212   Loan 00**
mbr called in, was pretty hateful,
wanted to know what we wanted him to do
with the Suburban, told him he needs to
contact his atty and let them know if he
wants to reaff or surrender and it will
all have to go through the bnkrcy
courts, mbr said if we want the car we
need to come and pick it up or he is
going to junk it, let him know that
nobody can do anything with the vehicle
until it is decided through the courts,
again referred mbr to his atty

**09/10/2008   12:09p   User 217   Loan 00**
Rec garn ck that was collected prior to
BK in the amount of 303.49 posted 30.00
to gl28200 to pay all atty fees and rest
to chg off loan 273.49.

**09/09/2008   8:22a   User 217   Loan 00**

**09/03/2008   4:25p   User 208   Loan 00**

**08/25/2008   4:31p   User 175   Loan 00**
Rec notice of Chp 7 Bk Harry & Kellie
Small both filed.Case# 08-52114 -jms

Attorney Ginger C Cord 155 E Main St
Suite 200 Lex, Ky 40507-1332 Phone#
859-226-0191. Trustee J James Rogan 345
S 4th St Danville, KY 40422 Tel #
859-236-8121.
First creditors meeting 9/16/08.

**08/25/2008   3:22p  User 217  Loan 00**

█████████████████████████████

**08/12/2008  11:36a  User 217  Loan 00**

█████████████████████████████       Also <u>rec garn ck</u>
for 591.14 posted all but 60.00 to loan
00.

**07/22/2008   8:31a  User 217  Loan 00**

█████████████████████████████

**07/15/2008  10:18a  User 217  Loan 00**

█████████████████████████████

**06/12/2008   4:00p  User 217  Loan 00**
<u>Rec garn ck</u> for 591.12 post to loan 00

**06/05/2008   1:32p  User 212  Loan 00**

█████████████████████████████

**05/19/2008   9:40a  User 217  Loan 00**
<u>Rec garn ck</u> for total of 649.49 posted
to loan 00 all atty fees paid ytd.

**05/16/2008  12:00p  User 217  Loan 00**
Member said we were putting a hardship
on his finances, Told member if he had
paid his monthly pmts as promised when
we made him the loan then he would not
be in this shape and we had to send to
attorney to collect. He ask for a
settlement figure told him only in a
lump sum and it would include all atty
fees.

**05/16/2008  11:54a  User 217  Loan 00**
Member ph ask me to lower the ammt we
are collecting thru garnish. Told him no
that when we have to consult any atty he
is given 30 days to call and make arrg
if we have no contact then we go ahead
and we would not stop action after garn
is received, He said he called atty and
was told he could not chg ammt but we
could. I told him that I/we would not
chg ammt we collect the max the state

will allow. If he had made his pmts he
would not be in this position.

**05/15/2008   1:10p User 175 Loan 00**
Member tel said he was paying us 800.00
per month with garnishment, can barely
make ends meet.Member wants to see if we
would accept 400.00 per month , contact
# 233-4511 EXT 4338.

**05/06/2008   1:28p User 217 Loan 00**

**04/18/2008   4:09p User 175 Loan 00**
Member tel wanted record of payment made
on loan since Dec.

**04/15/2008   12:00p User 217 Loan 00**
Rec garn ck for 564.16 Posted 150.00 to
GL 282000 and 414.16 to chg off loan 00.

**04/15/2008   10:56a User 217 Loan 00**

**03/10/2008   4:22p User 217 Loan 00**
Rec garn ck fr atty for $ 565.55 had it
posted to loan 00

**03/03/2008   5:33p User 217 Loan 00**

**02/12/2008   10:38p User 904 Loan 00**
Payment of 174.15 made on 02/11/08.

**01/18/2008   10:40p User 904 Share 80**
Brought current as of 01/18/08.

**01/18/2008   10:40p User 904 Share 80**
Deposit of 110.24 made on 01/17/08.

**01/17/2008   2:35p User 217 Loan 00**
Rec Garn ck fr atty for $ 458.29.
Cleared Share 80 chg off $110.24 and
$348.05 into GL 282000.

**01/10/2008   7:58a User 217 Loan 00**

**12/07/2007   12:48p User 217 Loan 00**

**12/07/2007   8:06a User 217 Loan 00**
Rec copy of default Judgment filed
11/19/07. 10 days for garn.

**11/02/2007  11:23a  User 217  Loan 00**

**09/25/2007  1:01p  User 217  Loan 00**
Rec copy of complaint filed 9/21/07

**07/30/2007  11:13a  User 217  Loan 00**
Rec copy of ltr sent to member on
7/27/07 from atty.

**07/23/2007  12:56p  User 217  Loan 00**
Sent to atty for leagal action.

**07/19/2007  9:42a  User 175  Loan 00**
Gave all paperwork to Diane on neg ck &
loan 00, to file legal.

**07/18/2007  8:43a  User 175  Loan 00**
Tel V/A hospital verified employment,
start date 05/12/04 position pipe
fitter.

**07/02/2007  6:22p  User 175  Loan 00**
& needs at least 1,600 for auto repairs.
Tried to talk to member on payment plan
, assured me he will not pay full
payments on loan needs funds to pay for
ride. Member said if we can't lower his
payment , & collection depot will not
help him, do legally whatever we need to
do. Member said his jod ends in four
days, first told me he was leaving the
job, then said job leaving him. Asked
about un-employment said OH so you want
that to!!

**07/02/2007  6:15p  User 175  Loan 00**
Member tel told him we will not pick up
auto has not ran for a year.

**07/02/2007  1:24p  User 175  Loan 00**
`10 Day Demand Letter' letter.

**06/30/2007  11:50p  User 904  Loan 00**
Payment of 416.00 made on 06/29/07.

**06/29/2007  10:33a  User 175  Loan 00**
Loan 00 past due 75 days@ 713.28 will
take from share 00 ( 416.00) to loan 00.

**06/26/2007  11:48p  User 904  Share 80**
Deposit of 25.57 made on 06/25/07.

**06/25/2007  2:33p  User 175  Loan 00**
Sent e-mail today on neg closed ck &
auto loan past due 71 days @ $713.28.

**06/25/2007  2:27p  User 175  Loan 00**
Tel 881-5317 today is working#  lmor
must ret call today by 6:00 PM.

**06/19/2007  2:48p  User 175  Loan 00**
TEl H/R @ Veterans Hospital, verified
members start date 05/12/05 works full
time in engineering dept as pipe fitter,
said will have to connect me to operator



EXHIBIT

C

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

* * * * * * * * * * *

IN RE:

HARRY D. SMALL                                         CHAPTER 7
KELLIE R. SMALL
                                             CASE NO. 08-52114
DEBTORS

HARRY D. SMALL
KELLIE R. SMALL                                       PLAINTIFFS

VS.                                          ADVERSARY NO. 10-5111

UNIVERSITY OF KENTUCKY FEDERAL
CREDIT UNION                                          DEFENDANT

---

### AFFIDAVIT OF DIANE DAVIS

I, Diane Davis, having been duly sworn, do depose and state as follows:

1.    I am the Asset Recovery Manager of University of Kentucky Federal Credit Union (the "Credit Union"). I am over the age of eighteen. I have personal knowledge of the facts stated in this Affidavit, and each is true and correct to the best of my knowledge, information and belief.

2.    I make this affidavit in support of the Credit Union's motion for summary judgment.

3.    Plaintiff Kellie Small is not now and never has been a member of the Credit Union. She has never been indebted to the Credit Union and the Credit Union never has reported any information about her to anyone.

4.   Plaintiff, Harry Small, defaulted on his vehicle loan with the Credit Union.  The Credit Union subsequently charged off the balance of his loan in December, 2007.

5.   The Credit Union reported that it had charged off Mr. Small's loan balance to the three major credit reporting agencies, TransUnion, Equifax and Experian.  It did so in a single transaction entry into its system, which was reported uniformly to all three credit reporting agencies.

6.   The Credit Union continued to report Mr. Small's former debt to the Credit Union as charged off after the Smalls received their discharge to all three credit reporting agencies between the date of the discharge and the date of the adversary complaint.  As before, it did so in a single transaction entry into its system that was uniformly reported to all three credit reporting agencies.

7.   The Credit Union did not use the code "KD" in connection with any information regarding the Smalls reported to any credit reporting agency.  The Credit Union does not know the meaning of the code "KD".

Further the Affiant sayeth naught.

_____
Diane Davis

COMMONWEALTH OF KENTUCKY )
                         )  SCT.
COUNTY OF FAYETTE        )

Subscribed and sworn to before me by Diane Davis, Asset Recovery Manager of University of Kentucky Federal Credit

2

Union, this 12 day of April, 2011.

My commission expires: 9|7|14

Rachel Soy Farnworth

NOTARY PUBLIC, KENTUCKY
STATE AT LARGE       ID 427363

114ukhsdd.af
041111

3



# UNITED STATES BANKRUPTCY COURT
### Eastern District of Kentucky
### Lexington Division

Mailing Address: P.O. Box 1111, Lexington, KY 40588–1111

| | | |
|---|---|---|
| In | Harry D. Small | { Case Number: 08–52114–jms |
| Re: | Kellie R. Small | { |
| | 103 Strawberry Court | { |
| | Nicholasville, KY 40356 | { |
| | 103 Strawberry Court | { Chapter: 7 |
| | Nicholasville, KY 40356 | { |
| aka/dba: Hank Small | | { |
| | | { |
| SSN/TID: xxx–xx–2360 | | { |
| | xxx–xx–1923 | { |

Debtor(s)

## DISCHARGE OF DEBTOR IN A CHAPTER 7 CASE

It appearing that the debtor is entitled to a discharge, **IT IS ORDERED** the debtor is granted a discharge under section 727 of title 11, United States Code, (The Bankruptcy Code).

Dated: <u>11/25/08</u>

By The Court

Joseph M Scott Jr
United States Bankruptcy Judge

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed before the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes (applies to cases filed on or after October 17, 2005);

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (applies to cases filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# CERTIFICATE OF NOTICE

District/off: 0643-5        User: teresah        Page 1 of 2        Date Rcvd: Nov 25, 2008
Case: 08-52114            Form ID: B18        Total Served: 60

```
The following entities were served by first class mail on Nov 27, 2008.
db          +Harry D. Small,   103 Strawberry Court,   Nicholasville, KY 40356-2363
jdb         +Kellie R. Small,   103 Strawberry Court,   Nicholasville, KY 40356-2363
tr          +J. James Rogan,   345 S 4th St,   Danville, KY 40422-2054
3635676      ADELPHIA,   C/O CREDIT PROTECTION ASSOC.,   PO BOX 9037,   ADDISON TX 75001-9037
3635677      ALLTELL,   C/O FIRST COLLECTION SERVICES,   1092 OTTER CREEK,   MABELVALE AR 72103-1661
3710784      AUTOZONE,   C/O  TRS RECOVERY SVCS,   PO BOX 17170,   DENVER CO  80217-0170
3635679     +CAPITAL ONE,   C/O MORGAN & POTTINGER,   204 E. MARKET STREET,   LOUISVILLE KY 40202-1218
3635678     +CAPITAL ONE,   C/O NORTHLAND GROUP, INC.,   PO BOX 390846,   MINNEAPOLIS MN 55439-0846
3635680      CENTRAL BAPTIST,   PO BOX 950221,   LOUISVILLE KY 40295-0221
3635681      CENTRAL BAPTIST,   C/O CREDIT BUREAU SYSTEMS,   100 FULTON COURT,   PADUCAH KY 42001-9004
3635682      CENTRAL BAPTIST HOSPITAL,   C/O CREDIT BUREAU SYTEMS,   100 FULTON COURT,   PADUCAH KY 42001-9004
3635683      CENTRAL KY ANESTHESIA,   C/O GLA COLLECTIONS CO.,   DEPT. #002,   PO BOX 7728,
              LOUISVILLE KY 40257-0728
3635684      CENTRAL KY RADIOLOGY,   C/O GLA COLLECTIONS,   DEPT. #002,   PO BOX 7728,
              LOUISVILLE KY 40257-0728
3710785      CITY OF TOLEDO,   C/O FINANCE SYSTEM OF TOLEDO INC,   PO BOX 351297,   TOLEDO OH  43635-1297
3635685      CREDIT BUREAU SYSTEMS,   P.O. BOX 11788,   LEXINGTON KY 40578-1788
3710786     +DELTA NATURAL GAS,   PO BOX 378,   NICHOLASVILLE KY 40340-0378
3635686      DIRECTV,   C/O PLAZA ASSOC.,   PO BOX 2769,   NEW YORK NY 10116-2769
3635687     +DPI,   2997 LBJ FREEWAY,   SUITE 225,   DALLAS TX 75234-7627
3635688     +DRAYER PHYSICAL THEREAPY,   601 PERIMETER DRIVE,   SUITE 100,   LEXINGTON KY 40517-4121
3635689     +FIRST SOUTH CREDIT,   252 EDGEWOOD DR,   NICHOLASVILLE KY 40356-1869
3710787      JJ MARSHALL & ASSOC/NATIONAL CITY,   C/O  REMIT CORP,   PO BOX 7,   BLOOMSBURG PA  17815-0007
3635691     +KENTUCKY ACCOUNTS SERVICE,   160 PROSPEROUS PLACE,   SUITE 101,   LEXINGTON KY 40509-1863
3635692      KENTUCKY URGENT TREATMENT,   C/O CASH-PRO, INC,   PO BOX 5469,   EVANSVILLE IN 47716-5469
3635693     +KENTUUCKY SPORTS MADICINE CLINIC,   601 PERIMETER DRIVE,   SUITE 200,   LEXINGTON KY 40517-4121
3635694      KY HIGHER ED STUDENT LOAN CORP,   P.O. BOX 24328,   LOUISVILLE KY 40224-0328
3635695      KY HIGHER ED STUDENT LOAN CORP,   P.O. BOX 798,   FRANKFORT KY 40602-0798
3635697     +LEXINGTON CLINIC,   C/O KENTUCKY  ACCOUNTS SERVICE,   160 PORSPEROUS PLACE,   SUITE 101,
              LEXINGTON KY 40509-1863
3635698     +LEXINGTON CLINIC,   C/O KENTUCKY ACCOUNTS SERVICE,   160 PROSPEROUS PLACE,   SUITE 103,
              LEXINGTON KY 40509-1863
3635699     +LEXINGTON EMERGENCY PHYS.,   C/O ASSETCARE, INC.,   PO BOX 15380,   WILMINGTON DE 19850-5380
3635700     +M.R. BISHOP D.M.D. & ASSOC.,   409 ETTER DRIVE,   NICHOLASVILLE KY 40356-1073
3635701      MALCOM B. MIRACLE D.M.D.,   C/O FFCC,   PO BOX 20790,   COLUMBUS OH 43220-0790
3635702      MCI,   C/O PARK DANSAN,   PO BOX 248,   GASTONIA NC 28053-0248
3710789      MCI,   C/O AFNI,   PO BOX 3427,   BLOOMINGTON IL  61702-3427
3710788      MEIJER INC,   C/O DRS BONDED,   PO BOX 36155,   CINCINNATI OH  45236-0155
3710790      MURPHY OIL/HILCO REC,   C/O  FMS INC,   PO BOX 707600,   TULSA OK  74170-7600
3635703      NATIONAL CITY BANK,   C/O JJ MARSHALL & ASSOC.,   PO BOX 182190,   UTICA MI 48318-2190
3635704      NEW LEXINGTON CLINIC,   P.O. BOX 12890,   LEXINGTON KY 40583-2890
3710792      NPC INTERNATIONAL,   C/O  CRA,   PO BOX 2103,   MECHANICSBURG PA  17055-2103
3710794     +PAPA JOHNS,   C/O  LAW OFFICE OF BENNETT & LONG,   1265 FT UNION BLVD,   STE 150,
              MIDVALE UT 84047-1862
3710795      PAPA JOHNS,   C/O  SECURITY CHECK INC,   PO BOX 1530,   DEPT 010,   SOUTHAVEN MS  38671-0016
3710793     +PARAGON FAMILY HEALTH,   PO BOX 23823,   LEXINGTON KY 40523-3823
3710796      SAFE AUTO,   3883 E BROAD ST,   COLUMBUS OH  43213-1129
3635705      SAINT JOSEPH HEALTHCARE,   C/O FROST-ARNETT CO.,   PO BOX 198988,   NASHVILLE TN 37219-8988
3635706     +SAINT JOSEPH HEALTHCARE INC.,   ONE SAINT JOSEPH DRIVE,   LEXINGTON KY 40504-3742
3635707     +SPRINT,   C/O CAVALRY PORTFOLIO SERVICES LLC,   PO BOX 27288,   TEMPE AZ 85285-7288
3710797     +ST JOSEPH HEALTH SYSTEM,   1 ST JOSEPH DR,   LEXINGTON KY 40504-3754
3710798      STRAWBRIDGE STUDIOS,   PO BOX 3005,   DURHAM NC  27715-3005
3710791     +SUSAN E NEIL MD PSC,   2101 NICHOLASVILLE RD STE 206,   LEXINGTON KY 40503-2525
3635708     +T-MOBILE,   C/O  VALENTINE & KEBARTAS, INC.,   PO BOX 325,   LAWRENCE MA 01842-0625
3635709     +UK HOSPITAL & KMSF,   C/O CENTRAL KY MANAGEMENT SERVICES, INC.,   LOCKBOX 951336,
              CLEVELAND OH 44193-0011
3635710      UNIVERSITY OF KENTUCKY,   C/O GENEAL REVENUE,   PO BOX 495999,   CINCINNATI OH 45249-5999
3635712     +UNIVERSITY OF KENTUCKY FCU,   C/O HON. HUSTON B. COMBS,   201 W. SHORT STREET,
              LEXINGTON KY 40507-1231
3635711     +UNIVERSITY OF KENTUCKY FCU,   2557 SIR BARTON WAY,   LEXINGTON KY 40509-2275
3649603     +UNIVERSITY OF KY FEDERAL CREDIT UNION,   C/O HUSTON B COMBS,   GESS MATTINGLY & ATCHISON PSC,
              201 W SHORT ST,   LEXINGTON KY 40507-1269
3710799     ++US BANK,   PO BOX 5229,   CINCINNATI OH 45201-5229
              (address filed with court: US BANK,   PO BOX 5227,   DEFICIENCY,   CINCINNATI OH  45201-5227)
3635713      US DEPARTMENT OF EDUCATION,   FEDERAL DIRECT STUDENT LOAN COLLECTIONS,   PO BOX 4169,
              GREENVILLE TX 75403-4169
3635714      VERIZON WIRELESS,   C/O LDG FINANCIAL SERVICES,   PO BOX 1425,   NORCROSS GA 30091-1425
3710800      WINDSTREAM,   C/O  ALLIANCE ONE,   PO BOX 3102,   SOUTHEASTERN PA  19398-3102
3635715      WOMENS CARE CENTER,   C/O CREDIT CLEARING HOUSE OF AMERICA,   PO BOX 1209,
              LOUISVILLE KY 40201-1209


The following entities were served by electronic transmission on Nov 26, 2008.
tr          +EDI: QJJROGAN.COM Nov 25 2008 22:38:00     J. James Rogan,   345 S 4th St,
              Danville, KY 40422-2054
3635690      EDI: IRS.COM Nov 25 2008 22:38:00     INTERNAL REVENUE SERVICE,   P.O. BOX 21126,
              PHILADELPHIA PA 19114
3710799      EDI: USBANKARS.COM Nov 25 2008 22:38:00     US BANK,   PO BOX 5227,   DEFICIENCY,
              CINCINNATI OH 45201-5227
                                                                           TOTAL: 3
```

```
           ***** BYPASSED RECIPIENTS (continued) *****

           ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
3635696*   +KY HIGHER ED STUDENT LOAN CORP,   P.O. BOX 798,   FRANKFORT KY 40602-0798
                                                                                       TOTALS: 0, * 1

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Nov 27, 2008**                    **Signature:**        *Joseph Speetjens*



**Experian™**
A world of insight



EXHIBIT
E

**Prepared for:**
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

**Page 1 of 14**

**Dear HARRY DAN SMALL,**

*To assist you in understanding your correction summary, we have
provided additional information that relates directly to items on your
personal credit report.*



*MIXED AADC 601*
0007937  2 MB 0.504 L 554
HARRY DAN SMALL
103 STRAWBERRY CT
NICHOLASVILLE KY 40356-2363

*OTHER ITEMS DISPUTED ARE NOT CURRENTLY DISPLAYING ON YOUR
PERSONAL CREDIT REPORT:-*

Any account included in a bankruptcy remains on the personal credit report for a
maximum of seven years from the date the bankruptcy was either filed or
discharged. The bankruptcy itself, listed in the public record information section
of the credit report, remains for seven years from the filing date if it was a
Chapter 13, or 10 years from the filing date if it was a Chapter 7, 11 or 12.
Public records information is obtained from courthouses.

As a national consumer credit reporting company, we collect and store
information from credit grantors and public records, which are obtained from
courthouses, following the guidelines in the Fair Credit Reporting Act. When you
use credit, a record of your payment history is stored. The monthly payments
leading up to a bankruptcy tells that account's history. Unless the history is
inaccurate, it cannot be deleted. Accounts included in a bankruptcy (other than
those under Chapter 13) will no longer indicate that a balance is owed.

Sincerely,

Experian
NCAC
PO BOX 9701
Allen TX 75013

0065558423   L-554-07937-0107000   

**Experian™**
A world of insight

**Prepared for:**
HARRY DAN SMALL

**Report date**
April 29, 2010

**Report number**

www.experian.com/disputes   **Page 2 of 14**

## Investigation results

### About our dispute verification process

This summary shows the revision(s) made to your credit file as a result of the verification we recently completed. If you still question an item, then you may want to contact the source of the information.

The federal Fair Credit Reporting Act states that you may:

- request a description of how we verified the item, including the business name and address contacted and the telephone number if reasonably available;
- add a statement disputing the accuracy or completeness of the information; and
- request that we send these results to organizations who have reviewed your credit report in the past two years for employment purposes or six months for any other purpose.

If no information follows, our response appeared on the previous page.

### How to read your results

**Deleted** - This item was removed from your credit report

**Remains** - This item has been verified as accurate

**Updated** - A change was made to this item; review this report to view the change. If ownership of the item was disputed, then it was verified as belonging to you.

**Reviewed** - This item was either updated or deleted; review this report to learn its outcome

## Results

We completed investigating any items you disputed with the sources of the information and processed any other requests you made. Here are the results:

| Credit items | Outcome |
|---|---|
| CMPPTNRS/CSU UNIV OF K | *Updated* |
| *1522658323....* | |

Visit experian.com/status to check the status of your pending disputes at any time

### What's your credit score?

**Find out by ordering your VantageScore® from Experian for only $7.95. To order your VantageScore, call 1 888 322 5583.**

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e., "Cancer Center") that reports your payment history to us. If so, those names display in your report, but in reports to others they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.





| | | Prepared for | Report date |
|---|---|---|---|
| | | HARRY DAN SMALL | April 29, 2010 |
| | | Report number | www.experian.com/disputes |
| | | | PO BOX 9701, Allen, TX 75013 |

**Page 3 of 14**

## Potentially negative items or items for further review

This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies and unpaid tax liens, which may remain for up to 10 years. A paid tax lien may remain for up to seven years. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

## Credit items

**CMPPTNRS/CSU UNIV OF KY**
PO BOX 3176
WINSTON SALEM NC 27102
*No phone number available*
**Partial account number**

*See History of account balances for additional information.*

| | |
|---|---|
| *Date opened* | Aug 1999 |
| *Reported since* | Nov 1999 |
| *Date of status* | Nov 2008 |
| *Last reported* | Feb 2010 |
| *Type* | Installment |
| *Terms* | 120 Months |
| *Monthly payment* | NA |
| *Responsibility* | Individual |
| *Credit limit or original amount* | $750 |
| *High balance* | NA |
| *Recent balance* | $0 as of Feb 2010 |

Status: Discharged through Bankruptcy Chapter 7.
Account history:
Collection as of Mar 2007 to Aug 2008, Apr 2006 to Jan 2007
180 days past due as of Oct 2008, Sep 2008, Mar 2005 to Mar 2006
150 days past due as of Feb 2005
120 days past due as of Jan 2005
90 days past due as of Dec 2004
60 days past due as of Nov 2004
Debt included in Chapter 7 Bankruptcy on Nov 25, 2008
This item was verified and updated on Apr 2010.
Address identification number: 14631150

---

**CREDIT MANAGEMENT**
4200 INTERNATIONAL PKWY
CARROLLTON TX 75007
(800) 377-7723
**Partial account number**

| | |
|---|---|
| *Date opened* | Sep 2009 |
| *Reported since* | Sep 2009 |
| *Date of status* | Sep 2009 |
| *Last reported* | Sep 2009 |
| *Type* | Collection |
| *Terms* | 1 Months |
| *Monthly payment* | NA |
| *Responsibility* | Individual |
| *Credit limit or original amount* | $320 |
| *High balance* | NA |
| *Recent balance* | NA |

Status: Paid, Closed.
Account history:
Collection as of Sep 2009
This item was verified and updated on Mar 2010.
Address identification number: 89377876

**Original creditor: TIME WARNER RICHMOND KY**



**Experian**

A world of insight

**Prepared for**
HARRY DAN SMALL

**Report number**
0797-1644-59

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

**Page 4 of 14**

## Potentially negative items or items for further review continued

---

**UNIV OF KY FCU**
1080 EXPORT ST
LEXINGTON KY 40504
*No phone number available*
**Partial account number**

| | |
|---|---|
| *Date opened* Feb 2005 | *Date of status* Feb 2008 |
| *Reported since* Jul 2007 | *Last reported* Feb 2008 |

*Type*
Deposit

*Terms*
NA

*Monthly payment*
NA

*Responsibility*
Individual

*Credit limit or original amount*
$110

*High balance*
NA

*Recent balance*
NA

Status: Paid,Closed. $110 written off.
Account history:
Charge Off as of Jul 2007 to Jan 2008
Address identification number:
89377876

---

**UNIV OF KY FCU**
1080 EXPORT ST
LEXINGTON KY 40504
*No phone number available*
**Partial account number**

.

*See History of account balances for additional information.*

| | |
|---|---|
| *Date opened* Jan 2002 | *Date of status* Jan 2008 |
| *Reported since* Feb 2002 | *Last reported* Apr 2010 |

*Type*
Installment

*Terms*
84 Months

*Monthly payment*
NA

*Responsibility*
Individual

*Credit limit or original amount*
$14,170

*High balance*
NA

*Recent balance*
$2,397 as of Apr 2010

Status: Account charged off. $6,755 written off.
Account history:
Charge Off as of Jan 2008 to Apr 2010
180 days past due as of Dec 2007
150 days past due as of Nov 2007
120 days past due as of Oct 2007
90 days past due as of Sep 2007
60 days past due as of Aug 2007
30 days past due as of Jul 2007, Jun 2007

This account is scheduled to continue on record until Mar 2014.

Your Statement: *"DELINQUENCY DUE TO JOB LAYOFF."*

This item was verified on Mar 2010 and remained unchanged.

Address identification number:
89377876

---





Prepared for
HARRY DAN SMALL

Report number

Report date
April 29, 2010
www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

Page 5 of 14

## Accounts in good standing

These items may stay on your credit report for as long as they are open. Once an account is closed or paid off it may continue to appear on your report for up to ten years.

### Credit items

**AMERICREDIT**
PO BOX 181145
ARLINGTON TX 76096
*No phone number available*
**Partial account number**

*See History of account balances for additional information.*

| | |
|---|---|
| *Date opened* Dec 2008 | *Date of status* Apr 2010 |
| *Reported since* Jan 2009 | *Last reported* Apr 2010 |

*Type* Installment
*Terms* 61 Months
*Monthly payment* $427

*Responsibility* Joint with KELLIE SMALL

*Credit limit or original amount* $15,805
*High balance* NA

*Recent balance* $13,775 as of Apr 2010

Status: Open/Never late.
Address identification number: 89377876

---

**FARMERS BANK**
200 N MAIN ST
NICHOLASVILLE KY 40356
*No phone number available*
**Partial account number**

| | |
|---|---|
| *Date opened* Aug 1996 | *Date of status* Sep 2004 |
| *Reported since* Mar 1997 | *Last reported* Sep 2004 |

*Type* Revolving
*Terms* NA
*Monthly payment* NA

*Responsibility* Individual

*Credit limit or original amount* $300
*High balance* $333

*Recent balance* NA

Status: Transferred,closed/Never late. $95 written off.
Account history:
Charge Off as of Sep 2004
Creditor's statement *"Purchased by another lender."*
Address identification number: 235597965

---

**HEIGHTS FINANCE #7216**
235 SOUTHLAND DR
LEXINGTON KY 40503
*No phone number available*
**Partial account number**

*See History of account balances for additional information.*

| | |
|---|---|
| *Date opened* Dec 2008 | *Date of status* Mar 2010 |
| *Reported since* Dec 2008 | *Last reported* Mar 2010 |

*Type* Installment
*Terms* 300 Months
*Monthly payment* NA

*Responsibility* Individual

*Credit limit or original amount* $3,404
*High balance* NA

*Recent balance* NA

Status: Refinanced,closed/Never late.
This account is scheduled to continue on record until Mar 2020.
Creditor's statement *"Account closed due to refinance."*
Address identification number: 89377876

0065558423    L-554-07937-0307000





Prepared for:
HARRY DAN SMALL

Report number

Report date
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013    **Page 6 of 14**

## Accounts in good standing continued

| | | | | | | |
|---|---|---|---|---|---|---|
| **HEIGHTS FINANCE #7216**<br>235 SOUTHLAND DR<br>LEXINGTON KY 40503<br>*No phone number available*<br>**Partial account number**<br><br>*See History of account balances for additional information.* | *Date opened*<br>Jul 2009<br>*Reported since*<br>Jul 2009 | *Date of status*<br>Mar 2010<br>*Last reported*<br>Mar 2010 | *Type*<br>Installment<br>*Terms*<br>25 Months<br>*Monthly payment*<br>$162 | *Responsibility*<br>Individual | *Credit limit or original amount*<br>$4,084<br>*High balance*<br>NA | *Recent balance*<br>$2,935 as of<br>Mar 2010 | Status: Open/Never late.<br>Address identification number:<br>89377876 |
| **STUDENT LOAN PEOPLE**<br>PO BOX 24266<br>LOUISVILLE KY 40224<br>*No phone number available*<br>**Partial account number**<br><br>*See History of account balances for additional information.* | *Date opened*<br>Apr 2003<br>*Reported since*<br>Nov 2009 | *Date of status*<br>Mar 2010<br>*Last reported*<br>Mar 2010 | *Type*<br>Installment<br>*Terms*<br>120 Months<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or original amount*<br>$1,313<br>*High balance*<br>NA | *Recent balance*<br>NA | Status: Refinanced,closed/Never late.<br>This account is scheduled to continue on record until Mar 2020.<br>Creditor's statement *"Account closed due to refinance."*<br>This item was verified and updated on Dec 2009.<br>Address identification number:<br>89377776 |
| **STUDENT LOAN PEOPLE**<br>PO BOX 24266<br>LOUISVILLE KY 40224<br>*No phone number available*<br>**Partial account number** | *Date opened*<br>Oct 2003<br>*Reported since*<br>Nov 2009 | *Date of status*<br>Mar 2010<br>*Last reported*<br>Mar 2010 | *Type*<br>Installment<br>*Terms*<br>120 Months<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or original amount*<br>$3,170<br>*High balance*<br>NA | *Recent balance*<br>NA | Status: NO STATUS.<br>Creditor's statement *"Adjustment pending."*<br>This item was verified and updated on Dec 2009.<br>Address identification number:<br>89377776 |
| **UNIV OF KY FCU**<br>1080 EXPORT ST<br>LEXINGTON KY 40504<br>*No phone number available*<br>**Partial account number** | *Date opened*<br>Jan 2002<br>*Reported since*<br>Feb 2002 | *Date of status*<br>Nov 2005<br>*Last reported*<br>Nov 2005 | *Type*<br>Revolving<br>*Terms*<br>NA<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or original amount*<br>$500<br>*High balance*<br>$500 | *Recent balance*<br>NA | Status: Paid,Closed/Never late.<br>This account is scheduled to continue on record until Nov 2015.<br>Comment: *"Account closed at consumer's request."*<br>Address identification number:<br>89377776 |



**Experian™**
A world of insight

Prepared for
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

**Page 7 of 14**

## Accounts in good standing continued

| | | | | | | |
|---|---|---|---|---|---|---|
| **UNIV OF KY FCU**<br>1080 EXPORT ST<br>LEXINGTON KY 40504<br>*No phone number available*<br>***Partial account number*** | *Date opened*<br>Jun 2004<br>*Reported since*<br>Jun 2004 | *Date of status*<br>Jun 2004<br>*Last reported*<br>Jun 2004 | *Type*<br>Installment<br>*Terms*<br>60 Months<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or*<br>*original amount*<br>$11,632<br>*High balance*<br>NA | *Recent balance*<br>NA | Status: Paid,Closed.<br>This account is scheduled to continue on record until Jun 2014.<br>Address identification number:<br>89377776 |
| **U.S. DEPT OF ED - DIRECT LOANS**<br>PO BOX 5609<br>GREENVILLE TX 75403<br>(800) 848-0979<br>***Partial account number*** | *Date opened*<br>Jun 1998<br>*Reported since*<br>Apr 2003 | *Date of status*<br>Mar 2010<br>*Last reported*<br>Mar 2010 | *Type*<br>Installment<br>*Terms*<br>149 Months<br>*Monthly payment*<br>NA | *Responsibility*<br>Individual | *Credit limit or*<br>*original amount*<br>$17,462<br>*High balance*<br>NA | *Recent balance*<br>NA | Status: Refinanced,closed.<br>This account is scheduled to continue on record until Mar 2020.<br>Creditor's statement *"Account closed due to refinance."*<br>Address identification number:<br>89377876 |
| **U.S. DEPT OF ED - DIRECT LOANS**<br>PO BOX 5609<br>GREENVILLE TX 75403<br>(800) 848-0979<br>***Partial account number*** | *Date opened*<br>Feb 2010<br>*Reported since*<br>Mar 2010 | *Date of status*<br>Apr 2010<br>*Last reported*<br>Apr 2010 | *Type*<br>Installment<br>*Terms*<br>300 Months<br>*Monthly payment*<br>$54 | *Responsibility*<br>Individual | *Credit limit or*<br>*original amount*<br>$23,039<br>*High balance*<br>NA | *Recent balance*<br>$22,765 as<br>of Apr 2010 | Status: Open/Never late.<br>Address identification number:<br>89377876 |

*See History of account balances for additional information.*





**Experian**
A world of insight

Prepared for
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010
www.experian.com/disputes    **Page 8 of 14**
PO BOX 9701, Allen, TX 75013

---

## History of your account balances

If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. Accounts listed are not duplicates of accounts displayed in public records or credit items.

---

**CMPPTNRS/CSU UNIV OF KY**
*Partial account number*

*Balance history*
Jan 2010: $971    Dec 2009: $971    Nov 2009: $749    Oct 2009: $749    Sep 2009: $749    Aug 2009: $812    Jul 2009: $812    Jun 2009: $870    May 2009: $870    Apr 2009: $870    Mar 2009: $870    Feb 2009: $870    Jan 2009: $870    Dec 2008: $870    Nov 2008: $870    Oct 2008: $870    Sep 2008: $870    Aug 2008: $870    Jul 2008: $870    Jun 2008: $870    May 2008: $870    Apr 2008: $870

*The original amount of this account was $750*

---

**UNIV OF KY FCU**
*Partial account number*

*Balance history*
Mar 2010: $2,397    Feb 2010: $2,397    Jan 2010: $2,397    Dec 2009: $2,397    Nov 2009: $2,397    Oct 2009: $2,397    Sep 2009: $2,397    Aug 2009: $2,397    Jul 2009: $2,397    Jun 2009: $2,397    May 2009: $2,397    Apr 2009: $2,790    Mar 2009: $2,790    Feb 2009: $2,790    Jan 2009: $2,790    Dec 2008: $2,790    Nov 2008: $2,790    Oct 2008: $2,790    Sep 2008: $3,063    Aug 2008: $3,594    Jul 2008: $4,361    Jun 2008: $4,952    May 2008: $5,602    Apr 2008: $6,016

*The original amount of this account was $14,170*

---

**AMERICREDIT**
*Partial account number*
..

*Balance history*
Mar 2010: $13,557    Feb 2010: $14,165    Jan 2010: $14,343    Dec 2009: $14,109    Nov 2009: $14,276    Oct 2009: $14,572    Sep 2009: $14,743    Aug 2009: $14,912    Jul 2009: $14,659    Jun 2009: $14,823    May 2009: $15,418    Apr 2009: $15,166    Mar 2009: $15,347    Feb 2009: $15,908    Jan 2009: $16,086

*The original amount of this account was $15,805*

---

**HEIGHTS FINANCE #7216**
*Partial account number*

*Balance history*
Feb 2010: $0    Jan 2010: $0    Sep 2009: $0    Aug 2009: $0    Jul 2009: $0    Jun 2009: $0    May 2009: $2,834    Apr 2009: $2,834    Mar 2009: $2,919    Feb 2009: $3,069    Jan 2009: $3,219    Dec 2008: $3,404

*The original amount of this account was $3,404*

---

**HEIGHTS FINANCE #7216**
*Partial account number*

*Balance history*
Feb 2010: $3,097    Jan 2010: $3,259    Dec 2009: $3,579    Nov 2009: $3,579    Oct 2009: $3,726    Sep 2009: $3,887    Aug 2009: $4,084    Jul 2009: $4,084

*The original amount of this account was $4,084*

---

**STUDENT LOAN PEOPLE**
*Partial account number*

*Balance history*
Feb 2010: $1,780    Jan 2010: $1,780    Dec 2009: $1,780

---





Experian™
A world of insight

**Prepared for**
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

**Page 9 of 14**

## History of your account balances continued

*The original amount of this account was $1,313*

---

**U.S. DEPT OF ED - DIRECT LOANS**
*Partial account number*

*Balance history*
Feb 2010: $22,825

*The original amount of this account was $23,039*



**Prepared for**
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013    **Page 10 of 14**

## Record of requests for your credit history

We make your credit history available to your current and prospective creditors and employers as allowed by law. Experian may list these inquiries for up to two years so that you will have a record of the companies that accessed your credit information.

## Inquiries shared with others

The section below lists all of the companies that have reviewed your credit report as a result of an action you took, such as applying for credit or financing or as a result of a collection. The inquiries in this section are shared with companies that view your credit history.

| **CAPITAL ONE AUTO FINANCE** | Date | Reason |
|---|---|---|
| PO BOX 30281 SALT LAKE CITY UT 84130 *No phone number available* | Dec 18, 2008 | Permissible purpose. This inquiry is scheduled to continue on record until Jan 2011. |

Address identification number: 89377876

| **CREDIT ACCEPTANCE** | Date | Reason |
|---|---|---|
| PO BOX 513 SOUTHFIELD MI 48037 *No phone number available* | Nov 8, 2008 | Permissible purpose. This inquiry is scheduled to continue on record until Dec 2010. |

Address identification number: 89377876

| **CAPITAL ONE AUTO FINANCE** | Date | Reason |
|---|---|---|
| PO BOX 30281 SALT LAKE CITY UT 84130 *No phone number available* | Sep 23, 2008 | Permissible purpose. This inquiry is scheduled to continue on record until Oct 2010. |

Address identification number: 89377876

| **CBCINNOVIS** | Date | Reason |
|---|---|---|
| PO BOX 1838 COLUMBUS OH 43216 *No phone number available* | Sep 2, 2008 | Conventional mortgage on behalf of 377 FRIENDLY FINANCE C. This inquiry is scheduled to continue on record until Oct 2010. |

Address identification number: 89377876

| **CONSERVE** | Date | Reason |
|---|---|---|
| 200 CROSS KEYS OFFICE PARK FAIRPORT NY 14450 (585) 421-1000 | Jul 3, 2008 | Permissible purpose. This inquiry is scheduled to continue on record until Aug 2010. |

Address identification number: 14631150

| **CAVALRY PORTFOLIO SERV.** | Date | Reason |
|---|---|---|
| PO BOX 27288 TEMPE AZ 85285 (800) 501-0909 | Apr 23, 2008 | Permissible purpose. This inquiry is scheduled to continue on record until May 2010. |

Address identification number: 89377876





Prepared for
HARRY IVAN SMALL

Report date
April 29, 2010

Report number

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

**Page 11 of 14**

## Inquiries shared only with you

You may not have initiated the following inquiries, so you may not recognize each source. We report these requests to you only as a record of activities, and we do not include any of these requests on credit reports to others.

We offer credit information about you to those with a permissible purpose, for example to:
- other creditors who want to offer you preapproved credit;
- an employer who wishes to extend an offer of employment;
- a potential investor in assessing the risk of a current obligation;
- Experian Consumer Assistance to process a report for you;
- your current creditors to monitor your accounts (date listed may reflect only the most recent request);
- a static copy of your credit report provided to a subsequent user necessary to complete your mortgage loan application.

**These inquiries do not affect your credit score.**

| **CONSUMERINFO.COM**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Apr 20, 2010; Apr 6, 2010; Mar 19, 2010; Mar 5, 2010; Feb 19, 2010; Feb 4, 2010; Jan 19, 2010; Jan 6, 2010; Dec 17, 2009; Dec 4, 2009; Nov 19, 2009 |
|---|---|
| **EXPERIAN**<br>PO BOX 9600<br>ALLEN TX 75013 | *Date*<br>Apr 7, 2010; Mar 9, 2010; Mar 7, 2010; Mar 4, 2010; Feb 11, 2010; Feb 11, 2010; Feb 11, 2010; Jan 11, 2010; Dec 19, 2009; Dec 19, 2009; Dec 14, 2009; Nov 21, 2008 |
| **CHOICEPOINT/P&C INSURANCE**<br>1000 ALDERMAN DR<br>ALPHARETTA GA 30005<br>*On behalf of USAA*<br>*On behalf of USAA for Insurance underwriting* | *Date*<br>Mar 25, 2010; Nov 4, 2009; Jul 16, 2009 |

| **CONSUMERINFO.COM**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Mar 25, 2010; Mar 7, 2010; Feb 11, 2010; Jan 11, 2010; Dec 22, 2009; Dec 21, 2009; Dec 19, 2009; Dec 14, 2009; Nov 13, 2009; Nov 4, 2009 |
|---|---|
| **CONSUMERINFO.COM INC**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Feb 6, 2010 |
| **CONSUMERINFO.COM**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Nov 4, 2009 |
| **CONSUMERINFO.COM INC**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Nov 4, 2009 |
| **CHOICEPOINT/P&C INSURANCE**<br>1000 ALDERMAN DR<br>ALPHARETTA GA 30005<br>*On behalf of WESTERN UNITED INS AGENT*<br>*On behalf of WESTERN UNITED INS AGENT for Insurance underwriting* | *Date*<br>Feb 3, 2009 |
| **CHOICEPOINT/P&C INSURANCE**<br><br>*On behalf of AMERICAN COMMERCE I AGEN*<br>*On behalf of AMERICAN COMMERCE I AGEN for Insurance underwriting* | *Date*<br>Feb 3, 2009 |
| **VAN RU CREDIT CORP**<br>1350 E TOUHY AVE STE 300E<br>DES PLAINES IL 60018 | *Date*<br>Dec 29, 2008 |
| **CONSUMERINFO.COM INC**<br>PO BOX 19729<br>IRVINE CA 92623 | *Date*<br>Nov 21, 2008 |

0065558423    L-554-07937-0607000





**Prepared for**
HARRY DAN SMALL

**Report number**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

---

**CHOICEPOINT**
1000 ALDERMAN DR
ALPHARETTA GA 30005
*On behalf of CP - US OPM*
*On behalf of CP - US OPM for 30*

*Date*
Jul 15, 2008

## Personal information

The following information is reported to us **by you**, **your creditors** and/or **other sources**. Each source may report your personal information differently, which may result in variations of your name, address, Social Security number, etc. As part of our fraud protection efforts, a notice with additional information may appear.

### Names

HARRY SMALL
**Name identification number:** 82
HARRY D SMALL
**Name identification number:** 5049
HARRY D SMALL Jr
**Name identification number:** 17789
HARRY DAN SMALL Jr
**Name identification number:** 19222
HANK SMALL
**Name identification number:** 31830

### Addresses

These addresses are listed in no particular order and may include previous addresses where you received mail. The Address identification number is how our system identifies the address and identifies which creditor, court or potential creditor reported the address to us. The geographical code shown with each address identifies the state, county, census tract, block group and Metropolitan Statistical Area associated with each address. These listings do not affect your credit score.

| | *Type of address* | *Geographical code* |
|---|---|---|
| 103 STRAWBERRY CT<br>NICHOLASVILLE KY 40356-2363<br>**Address identification number**<br>0089377876 | Single family | 0-6010210-113-4280 |
| 573 ROUTE 45<br>SALEM NJ 08079-4229<br>**Address identification number**<br>0014631150 | Single family | 0-2130010-33-6160 |
| 224 STRAWBERRY LN<br>NICHOLASVILLE KY 40356-2341<br>**Address identification number**<br>0089377776 | Single family | 0-6010210-113-4280 |

0065558423   L-554-07937-0607000





**Experian™**

A world of insight

| | Prepared for | Report date |
| --- | --- | --- |
| | HARRY DAN SMALL | April 29, 2010 |
| | **Report number** | www.experian.com/disputes | **Page 13 of 14** |
| | **0797-1644-59** | PO BOX 9701, Allen, TX 75013 | |

## Personal information continued

| | Type of address | Geographical code |
| --- | --- | --- |
| 440 SOUTHBROOK DR<br>NICHOLASVILLE KY 40356-2932 | Single family | 0-605021 0-113-4280 |
| **Address identification number**<br>0235597965 | | |
| 4404 MCCORNACK ROAD APT A<br>WAHIAWA HI 96786- | Apartment<br>complex | 0-00- 0- |
| **Address identification number**<br>0197209906 | | |
| 307 E MAIN ST APT3<br>WILMORE KY 40390-1352 | Apartment<br>complex | 0-604001 0-113-4280 |
| **Address identification number**<br>0089435446 | | |
| 1435 S NICHOLASVILLE RD APT216<br>LEXINGTON KY 40503-1151 | Apartment<br>complex | 0-250010-67-4280 |
| **Address identification number**<br>0089587671 | | |

### Social Security number variations

As a security precaution, we did not list the Social Security number that you provided when you contacted us. The numbers below are variations that have been reported to us. Only the last four digits of each reported variation are displayed. Numbers that appear here vary from the number you used to generate this report. Actual differences in the numbers may be part of the displayed portion or part of the hidden portion.
None

### Date of birth

### Telephone numbers

### Spouse or co-applicant

KELLIE

### Employers

EXCELL VENDING    -

EXCEL VENDING    -

### Notices

This address has pertained to a business: 103 STRAWBERRY CT NICHOLASVILLE KY 40356    .

### Notices

EDUCATION-SOCIAL SERVICE: 103 STRAWBERRY CT, NICHOLASVILLE, KY, 40356    .

---End of Report---

If you disagree with information in your report you may dispute it at:
**www.experian.com/disputes**

You may also visit www.experian.com to view your report again.



**Experian™**
A world of insight

**Prepared for**
HARRY DAN SMALL

**Report number**
**0797-1644-59**

**Report date**
April 29, 2010

www.experian.com/disputes
PO BOX 9701, Allen, TX 75013

THIS PAGE INTENTIONALLY LEFT BLANK



UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

* * * * * * * * * * *

IN RE:

HARRY D. SMALL                                    CHAPTER 7
KELLIE R. SMALL
                                          CASE NO. 08-52114
DEBTORS

HARRY D. SMALL
KELLIE R. SMALL                                  PLAINTIFFS

VS.                                      ADVERSARY NO. 10-5111

UNIVERSITY OF KENTUCKY FEDERAL
CREDIT UNION                                     DEFENDANT

RESPONSE OF DEFENDANT
TO PLAINTIFFS' FIRST DISCOVERY REQUESTS

    This response to the first discovery requests of the
Plaintiffs is submitted on behalf of Defendant, University of
Kentucky Federal Credit Union (the "Credit Union").

INTERROGATORIES

Preliminary Statement

    The responses to the Interrogatories set forth below are
based upon the Credit Union's present knowledge and upon
information now available to the Credit Union without benefit
of having completed discovery. Therefore, the Credit Union
reserves the right to amend or supplement the answers or
objections to any and all of these Interrogatories.
Otherwise, the Credit Union will supplement this response in
accordance with the requirements of Rule 7026 of the Federal
Rules of Bankruptcy Procedure.

General Objections

    The Credit Union makes the following general objections,
each of which applies to the Interrogatories in their entirety
as well as each paragraph thereof.

    A.   To the extent that any part of any Interrogatory
calls for the discovery of information which is privileged or

which constitutes material prepared in anticipation of litigation or for trial, the Credit Union objects to such discovery on the grounds that such materials are privileged or constitute work product and are not within the scope of the discovery contemplated by Rule 7026 of the Federal Rules of Bankruptcy Procedure.

B. The Credit Union objects to the Plaintiffs' "Instructions and Definitions" to the extent they exceed the requirements of the Federal Rules of Bankruptcy Procedure.

Without waving the foregoing general objection, the Credit Union responds to the Interrogatories as follows:

1. Please identify by name, bankruptcy case number, and bankruptcy district, any and all cases where you have been found to have violated the automatic stay or the discharge injunction or where you have settled a stay violation or a discharge violation case by way of the payment of United States currency to debtors or the attorney for the debtors. This question relates to any such actions taken within five (5) years of the date of the filing of the Complaint in this contested case.

ANSWER: None.

2. As to each bankruptcy case identified in Interrogatory No. 1, please state whether or not the matter was resolved by a settlement or a court order and state the specific terms and conditions of every settlement and of every court order or settlement agreement that was subsequently approved any court order.

ANSWER: Not applicable.

3. State whether or not you received any notice of this bankruptcy case on or after the filing date as alleged in the Complaint, and if so state the type and nature of said notice or notices and describe each and every action that was taken upon the receipt of each such notice or notices to properly identify and code the account as a bankruptcy account.

ANSWER: The Credit Union objects to this request as overly broad, unduly burdensome, vague and argumentative. Without waiving that objection, the Credit Union states that it received notice of this bankruptcy case on or after the filing date by mail. Upon receipt of notice of the filing of this case, the Credit Union: (i) promptly notified the Department of the Treasury of the filing in order to terminate an existing wage garnishment in accordance with the automatic stay, and (ii) noted its files accordingly and thereafter took no further action to attempt to collect the indebtedness.

2

4.    State the date when the account or accounts of the
debtor herein was or were acquired by you and identify all
parties and documents associated with or related to the
account.  Also, if the account or accounts of the debtor was
or were transferred or assigned post-petition to a collection
division or department or to a bankruptcy division or
department then state and describe all steps and documents
employed to identify the account or each of the accounts as a
former or current bankruptcy account and describe in detail
all actions taken to determine if the debt had been discharged
in bankruptcy, had been involved in a bankruptcy case that was
dismissed before discharge, or was involved in a pending
bankruptcy case.  Identify any and all parties who were
responsible for these review and identification procedures.

ANSWER:  The Credit Union "acquired" the loan account of
the Plaintiff, Harry Small, on or about January 30, 2002,
although Harry Small opened his share account on or about
January 15, 1999.  The account was not transferred or assigned
post-petition to a collection division or department or to a
bankruptcy division or department.

5.    Please provide a list of all your company's
officers, including names and addresses.

ANSWER:  The Credit Union objects to this interrogatory
as overly broad and unduly burdensome.  Without waiving that
objection, the Credit Union states that its current officers
are:

| | |
|---|---|
| Scott Kelley | Chairman |
| Marilyn Childre | Vice Chairman |
| Marta Collins | Treasurer |
| Penny Cox | Secretary |
| David Kennedy | President and CEO |

6.    For the time period when the Plaintiff's discharge
order was entered (fall 2008), describe in detail any and all
actions collection agents and employees were instructed to
take when they were notified of the discharge of a consumer by
the attorney for any consumer, any bankruptcy Trustee, or any
bankruptcy court.

ANSWER:  They were instructed to document the account
with the date of the discharge and to not take any action to
collect the Plaintiff's account.

7.    Describe in detail the system or systems you employ
to identify bankruptcy files and to implement procedures to
correct any negative reporting with any public credit
reporting agency with respect to such files.

3

ANSWER:   The Credit Union objects to this interrogatory as vague.  Without waving that objection, the Credit Union notes its files upon the filing of a bankruptcy case and immediately suspends any further actions to collect such accounts for so long as a stay or discharge injunction is in effect.   It does not have systems specifically designed to "correct" any "negative" reporting.   What reporting is "negative" is a matter of opinion.   It does have systems in place to insure that the account information reported to credit reporting agencies is accurate.

8.   Describe in detail how your computer system is operated, how it functions, the information it can secure on a consumer including but not limited to on-line credit reports from Equifax, Experian and TransUnion, the time for this system to acquire any such information, and the names of all parties who have access to this system.

ANSWER:   The Credit Union objects to this interrogatory as overly broad, unduly burdensome, vague and not reasonably calculated to lead to this discovery of admissible evidence. The Credit Union has numerous computer systems used for various purposes by various employees.   To provide the requested information for all of them would be unduly burdensome.

9.   State whether or not you have access to the PACER System employed by the Federal Bankruptcy courts and if so identify and attach all documents related to the terms and conditions under which you use this system.

ANSWER:   The Credit Union objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence.   Without waiving that objection, the Credit Union does not use the PACER system.   It has access to the PACER system indirectly through its counsel, which uses its account in accordance with the terms of use available on the PACER website.

10.   If the answer to interrogatory number 9 is yes, then state how many PACER accounts you use, whether or not the PACER system is integrated into your customer data systems, and the time required for any employee to gain access to the PACER system.

ANSWER:   Not applicable.

11.   State the name, title or position, address and telephone number of each and every witness that you plan to call to testifY at the hearing in this case and state the substance of the testimony expected from each such witness.

4

ANSWER:   The Credit Union has not determined which witnesses it will call at the trial of this action.   The Credit Union will disclose its witnesses in accordance with the Court's scheduling order and the applicable rules of procedure.

12.  Identify with particularity each and every exhibit that you will seek to introduce into evidence at the hearing in this matter.

ANSWER:   The Credit Union has not determined which exhibits it will offer at the trial of this action.   The Credit Union will disclose its exhibits in accordance with the Court's scheduling order and the applicable rules of procedure.

13.  State each and every contention that you will present at the hearing in this matter as to why there is no violation of the discharge injunction in this case.

ANSWER:   The Credit Union has not determined which contentions it will make at the trial of this action.   The Credit Union will disclose its trial contentions in accordance with the Court's scheduling order and the applicable rules of procedure.   The Credit Union will contend at trial that none of its conduct violated the discharge injunction in this case and that the Plaintiffs have not and cannot identify any such conduct.

14.  Please describe all training provided to your employees who are involved in the collection or reporting of consumer debts with respect to the automatic stay and the discharge injunction of Title 11 of the United States Code and fully describe the content, timing, and duration of such training, and identify all manuals, books, records, video tapes, and other documents used in connection therewith.

ANSWER:  The Credit Union objects to this interrogatory to the extent it seeks information regarding "all training" received by the described employees regardless of the subject. To the extent the interrogatory seeks information regarding training on the subject of the automatic stay and the discharge injunction, the Credit Union's Asset Recovery Manager provides training to employees in her department on those subjects as necessary to ensure that the Credit Union complies with its obligations under applicable law at all times.   A copy of the current training materials will be provided.

15.  State the name, address and title of each and every party providing any information with respect to the answers to these interrogatories.

5

ANSWER:    If the word "party" is intended to refer to employees of the Credit Union, then the following employee (with the assistance of counsel) provided information with respect to the answers to these interrogatories: Diane Davis, 1080 Export Street, Lexington, KY  40504, Asset Recovery Manager.

16.    State the name, address and title of all your employees who have the primary responsibility of providing credit information to public credit reporting agencies.

ANSWER:  Diane Davis, 1080 Export Street, Lexington, KY 40504, Asset Recovery Manager.

6

## VERIFICATION

I have read the foregoing Answers to Interrogatories and the facts contained therein are true and accurate to the best of my knowledge and belief.

_Diane Davis_
Diane Davis

STATE OF KENTUCKY
COUNTY OF FAYETTE

Subscribed and sworn to before by Diane Davis, as Asset Recovery Manager of University of Kentucky Federal Credit Union, this _28_ day of January, 2011.

My commission expires _9/7/14, ID 427303_.

_Rachel Sq S Turnerle_
Notary Public

7

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### Preliminary Statement

As to each paragraph below in which the Credit Union states that the documents described in that paragraph will be produced, the Credit Union will produce such documents, or copies thereof, for inspection in the offices of Gess Mattingly & Atchison, P.S.C., 201 West Short Street, Lexington, Kentucky 40507 (or at such other place as may be agreed upon by counsel for the parties) at such dates and times as counsel for the parties may agree. Upon inspection, if counsel for the Plaintiffs desires a copy of any of the documents inspected, the Credit Union will cause such copies as are ordered by the Plaintiffs' counsel to be made, at the Plaintiffs' expense, at a cost to be agreed upon by counsel. The Credit Union's agreement to produce any document is not an acknowledgement that the document exists or has been located. A statement in this Response that the Credit Union will produce certain documents means that the Credit Union agrees to produce such documents to the extent that they are in the Credit Union's possession, custody or control and have been located after a diligent search.

### General Objections

The Credit Union makes the following general objections, each of which applies to the Request in its entirety as well as each paragraph thereof.

A.   To the extent that any part of the Request calls for the discovery of documents which are privileged or which constitute the work product of attorneys, including, without limitation, confidential attorney/client communications, the Credit Union objects to such discovery on the grounds that such materials are privileged or constitute work product and are not within the scope of the discovery contemplated by Rule 7026 of the Federal Rules of Bankruptcy Procedure.

B.   Where the Plaintiffs' requests are overlapping or otherwise duplicative or cumulative, documents will be produced only in response to one request.

C.   The Credit Union objects to the Plaintiffs' "Instructions and Definitions" to the extent they exceed the requirements of the Federal Rules of Bankruptcy Procedure.

Subject to and without waiving the foregoing General Objections, the Credit Union responds to each paragraph of the Request as follows:

1.   Please provide a copy of your Charter and your

8

Bylaws.

RESPONSE:  The Credit Union will produce documents that are responsive to this request.

2.   Attach and identify copies of all credit reporting records prepared by you in connection with the account which is the subject of the Complaint.  This request specifically includes, but is not limited to, any and all "frozen data scans" or file records that have been removed from the master file for the plaintiff and placed in a quarantine file or on a hard copy document or other report, log or other documentation.

RESPONSE:  The Credit Union does not have any documents that fall within the scope of this request.

3.   Identify and attach all documents, memos, records, and telephone messages written, recorded or otherwise, with respect to the debtor's account which is the subject of the Complaint.

RESPONSE:  The Credit Union objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving that objection, the Credit Union will produce documents that are responsive to this request.

4.   Attach and identify all documents that refer to or otherwise describe and document any problems or other deficiencies related to the identification of "bankruptcy" accounts including but not limited to the nature and extent of those problems and those deficiencies, the date such problems and deficiencies were initially identified, and any and all steps taken to remedy any and all such problems and deficiencies.

RESPONSE:  The Credit Union objects to this request as vague.  Without waiving that objection, the Credit Union does not have any responsive documents in its possession.

5.   Identify and attach all documents related to the problems encountered by you regarding your difficulty or inability to identify any of your accounts as either active or charged off or discharged bankruptcy accounts.

RESPONSE:  The Credit Union objects to this request as vague.  Without waiving that objection, the Credit Union does not have any responsive documents in its possession.

6.   Attach and identify all documents that refer to or otherwise describe and document any problems or other

9

deficiencies related to the reporting of discharged debts to credit reporting agencies, including but not limited to the nature and extent of those problems and those deficiencies, the date such problems and deficiencies were initially identified, and any and all steps taken to remedy any and all such problems and deficiencies.

RESPONSE:  The Credit Union objects to this request as vague.  Without waiving that objection, the Credit Union does not have any responsive documents in its possession.

7.   Attach and identify all documents related to the use, operation and maintenance of the computer system used to generate information for credit reporting.

RESPONSE:  The Credit Union objects to this request as overly broad and unduly burdensome.  Without waiving that objection, the Credit Union will produce documents that are responsive to this request.

## REQUESTS FOR ADMISSION

The Credit Union submits the following responses to the requests for admissions propounded by the Plaintiffs.

1.   The Defendants have negatively reported the debts owed on the subject accounts as "CHARGED OFF" on the Plaintiffs Consumer Credit Reports on file with the Experian credit reporting agency.

RESPONSE:  Admit Defendants (sic) accurately reported subject accounts as charged off but otherwise deny.

2.   The subject debts are being reported as follows:

[See Chart on Requests]

RESPONSE:  Denied.

3.   The Defendant had an affirmative duty under Nelson: v Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002) and Stafford v. Cross Country Bank, 262 F.Supp.2d 776 (W.D.Ky. 2003) to conduct a proper reinvestigation and to correct all erroneous consumer credit information after receiving notice of the order of discharge entered on November 25, 2008.

RESPONSE:  The Credit Union objects to this request.  The authorities to which reference is made speak for themselves and the application of those authorities, if any, to this case is a legal conclusion.  To the extent a response to this

request is required, it is denied.

4.   The Defendant willfully, intentionally and without any just cause failed to comply with this duty.

RESPONSE:  The Credit Union objects to this request vague and argumentative.   Without waiving that objection, the request is denied.

5.   The Defendant's receipt of the debtors' order of discharge by the Defendant constituted the receipt of a dispute with regard to the completeness and accuracy of the pre-bankruptcy information in their consumer credit reports as provided for by Section 1681i(a)(2) of Title 15 of the United States Code.

RESPONSE:  Denied.

6.   The Defendant failed to cause the Experian consumer credit report of the Plaintiff to be amended so as to list all debts discharged in bankruptcy has having a "0" credit balance.

RESPONSE:  The Credit Union objects to this request on the grounds that it lacks the ability to dictate how Experian reports the information provided by the Credit Union.  Without waiving that objection the request is denied.

7.   The Defendant is aware of a problem in how its computer system communicates data to the credit reporting agency Experian but has willfully and intentionally done nothing to correct this problem despite the fact that Defendant communicates false consumer account information.

RESPONSE:  Denied.

William W. Allen
Huston B. Combs
GESS MATTINGLY & ATCHISON, P.S.C.
201 West Short Street
Lexington, Kentucky 40507-1269
Telephone:  (859) 252-9000
Facsimile:  (859) 233-4269
E-Mail:  wallen@gmalaw.com
*Counsel for Defendant*

Dated:  January 28, 2011.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2011, I mailed the foregoing document by first-class mail, postage prepaid, addressed to the following:

Leslie A. Cayton, Esq.
Friend & Associates, PSC
PO Box 1488
Georgetown, KY  40324
*Counsel for Plaintiffs*

*Counsel for Defendant*

114ukhs.r
35931-5.2
012811

12

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

* * * * * * * * * * *

IN RE:

HARRY D. SMALL                                          CHAPTER 7
KELLIE R. SMALL

                                                  CASE NO. 08-52114
DEBTORS

HARRY D. SMALL
KELLIE R. SMALL                                        PLAINTIFFS

VS.                                          ADVERSARY NO. 10-5111

UNIVERSITY OF KENTUCKY FEDERAL
CREDIT UNION                                           DEFENDANT

---

RESPONSE OF DEFENDANT
TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION

The Credit Union submits the following responses to the second requests for admissions propounded by the Plaintiffs.

1.   As of today it is more accurate to describe Harry Small's UKFCU debts as "discharged" rather than as "charged off."

RESPONSE:   Denied.

William W. Allen
Huston B. Combs
GESS MATTINGLY & ATCHISON, P.S.C.
201 West Short Street
Lexington, Kentucky 40507-1269
Telephone:  (859) 252-9000
Facsimile:  (859) 233-4269
E-Mail:  wallen@gmalaw.com
*Counsel for Defendant*

Dated:  April 4, 2011.

CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I mailed the

foregoing document by first-class mail, postage prepaid,

addressed to the following:

Leslie A. Cayton, Esq.
Friend & Associates, PSC
PO Box 1488
Georgetown, KY  40324
*Counsel for Plaintiffs*

*Counsel for Defendant*

114ukhs.r2
35931-5.2
040411

2

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

* * * * * * * * * * *

IN RE:

HARRY D. SMALL                                      CHAPTER 7
KELLIE R. SMALL

                                           CASE NO. 08-52114
DEBTORS

HARRY D. SMALL
KELLIE R. SMALL                                    PLAINTIFFS

VS.                                        ADVERSARY NO. 10-5111

UNIVERSITY OF KENTUCKY FEDERAL
CREDIT UNION                                       DEFENDANT

---

RESPONSE OF DEFENDANT
TO PLAINTIFFS' SECOND INTERROGATORIES

     This response to the second interrogatories of the
Plaintiffs is submitted on behalf of Defendant, University of
Kentucky Federal Credit Union (the "Credit Union").

Preliminary Statement

     The responses to the Interrogatories set forth below are
based upon the Credit Union's present knowledge and upon
information now available to the Credit Union without benefit
of having completed discovery.  Therefore, the Credit Union
reserves the right to amend or supplement the answers or
objections to any and all of these Interrogatories.
Otherwise, the Credit Union will supplement this response in
accordance with the requirements of Rule 7026 of the Federal
Rules of Bankruptcy Procedure.

General Objections

     The Credit Union makes the following general objections,
each of which applies to the Interrogatories in their entirety
as well as each paragraph thereof.

     A.   To the extent that any part of any Interrogatory
calls for the discovery of information which is privileged or
which constitutes material prepared in anticipation of
litigation or for trial, the Credit Union objects to such

discovery on the grounds that such materials are privileged or constitute work product and are not within the scope of the discovery contemplated by Rule 7026 of the Federal Rules of Bankruptcy Procedure.

B.    The    Credit    Union    objects    to    the    Plaintiffs' "Instructions and Definitions" to the extent they exceed the requirements of the Federal Rules of Bankruptcy Procedure.

Without waving the foregoing general objection, the Credit Union responds to the Interrogatories as follows:

1.    What does the term "KD" mean in the context of the Credit Union's credit reporting and when does the Credit Union use it?

ANSWER:    It means nothing to the Credit Union.    The Credit Union does not use it.

2.    What steps did the Credit Union take in response to the Smalls' credit report disputes regarding the UKFCU debts from November 2008 to the time of your response?    If data is available for each report made to the credit reporting bureaus since November 2008, please provide that data.

ANSWER:    Kellie Small never had an account or debt with the Credit Union and therefore there was no credit report to dispute with her.    When the Credit Union was notified that Harry Small had made an inquiry, it made a prompt and diligent investigation, it verified that the manner in which it was reporting was accurate and notified Experian.    It made the most recent update to its report not because information previously reported was inaccurate but in an effort to avoid any more frivolous lawsuits such as this one.

3.    What keys has the Credit Union used when uploading information regarding the Smalls to Experian?

ANSWER:    The Credit Union did not upload any information as to Kellie Small because she never was indebted to the Credit Union.    The Credit Union objects to this request as vague and unduly burdensome because the word "keys" is undefined.    Without waiving those objections, the Credit Union did not, to the best of its knowledge, use "keys" in connection with any upload of information regarding Harry Small.

4.    Please describe the Credit Union's procedure for charging off a debt.

ANSWER:    The Credit Union makes an entry on its books to reflect that the indebtedness is no longer an asset of the

2

Credit Union.

5.    Please describe the Credit Union's procedures and policies for ensuring the accuracy of information reported to credit reporting bureaus.

ANSWER: It is the Credit Union's policy that information reported to credit reporting bureaus be accurate.  It carried out that policy in the case of Harry Small.  The Credit Union objects to the request to describe all of the Credit Union's procedures to carry out that policy as unduly burdensome.

6.    Please state the Credit Union's explanation as to why "charged off" is more accurate than "discharged in bankruptcy" when describing the Small debts.

ANSWER:   "Charged off" accurately describes the last action taken by the Credit Union with regard to Harry Small's former indebtedness to the Credit Union.  The Credit Union did not grant Harry Small a discharge in bankruptcy; that was the action of the United States Bankruptcy Court for the Eastern District of Kentucky and not the Credit Union.  The effect of that discharge on Harry Small's former indebtedness to the Credit Union is a legal conclusion.  The fact that Harry Small received a discharge in bankruptcy is an item of information that Harry Small, not the Credit Union, had a duty to report to any potential creditor.  Further, the fact that Harry Small had received a discharge appeared elsewhere on Harry Small's credit reports.  The legal consequences of that discharge on Harry Small's former indebtedness to the Credit Union is the same regardless whether notice of that discharge is provided by Harry Small, the Credit Union, the Bankruptcy Court or anyone else.

7.    Please identify the person or persons who were responsible for the most recent updates to the Small credit entry with Experian.

ANSWER:  Diane Davis, 1080 Export Street, Lexington, KY 40504, Asset Recovery Manager.

8.    Please describe the Credit Union's procedures and policies for responding to a credit report dispute.

ANSWER: It is the Credit Union's policy and procedure to perform a prompt and diligent investigation of any disputed item of information, determine whether the disputed information is accurate and advise the credit reporting agency of the results of that investigation.

3

04/01/2011 04:07 FAX 8592644205   UKCU ASSET RECOVERY   ☑002

VERIFICATION

I have read the foregoing Answers to Interrogatories and the facts contained therein are true and accurate to the best of my knowledge and belief.

_Diane Davis_
Diane Davis

STATE OF KENTUCKY
COUNTY OF FAYETTE

Subscribed and sworn to before by Diane Davis, as Asset Recovery Manager of University of Kentucky Federal Credit Union, this 1st day of April, 2011.

My commission expires 9/7/14 .

_Rachel Sug Faircloth_
Notary Public ID 427363

4

_____
William W. Allen
Huston B. Combs
GESS MATTINGLY & ATCHISON, P.S.C.
201 West Short Street
Lexington, Kentucky 40507-1269
Telephone:  (859) 252-9000
Facsimile:  (859) 233-4269
E-Mail:  wallen@gmalaw.com
*Counsel for Defendant*

Dated:  April 4, 2011.

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I mailed the foregoing document by first-class mail, postage prepaid, addressed to the following:

Leslie A. Cayton, Esq.
Friend & Associates, PSC
PO Box 1488
Georgetown, KY  40324
*Counsel for Plaintiffs*

_____
*Counsel for Defendant*

114ukhs.rl
35931-5.2
040411

5