**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

HARRY D. SMALL and
KELLIE R. SMALL                                              CASE NO. 08-52114

    DEBTORS


HARRY D. SMALL and                                           PLAINTIFFS
KELLIE R. SMALL

v.                                                           ADV. NO. 10-5111

UNIVERSITY OF KENTUCKY
FEDERAL CREDIT UNION                                         DEFENDANT


**MEMORANDUM OPINION**

    In this adversary proceeding, the Debtors seek damages from the University of Kentucky Federal Credit Union ("UK Credit Union") for alleged violations of the discharge injunction, and the Fair Credit Reporting Act ("FCRA"). The Debtors' claims arise out of an entry on a credit report relating to a debt owed to UK Credit Union which was discharged in the Debtors' Chapter 7 case. UK Credit Union has moved for summary judgment. Because the Court finds that UK Credit Union has not attempted to collect the discharged debt and was under no statutory duty to correct the information under the FCRA, the motion for summary judgment will be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and it is a core proceeding pursuant to 28 U.S.C. § 157(a)(2)(A) and (O).

I.

    Summary judgment may be granted if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The party seeking summary judgment "bears the initial responsibility of informing the [ ] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

II.

The relationship between the parties began when the Debtor husband obtained a purchase money vehicle loan from UK Credit Union in January, 2002.   He subsequently defaulted on the loan, and UK Credit Union charged off the balance in December, 2007. UK Credit Union thereafter reported that it had charged off the loan balance to the three major credit reporting agencies.

The Debtors filed their Chapter 7 bankruptcy case on August 19, 2008.   The Court entered an order discharging the Debtors from their debts on November 25, 2008, and their bankruptcy case was closed on December 24, 2008.   After the Debtors received their discharge, UK Credit Union continued to report the debt as charged off.   The Debtors soon thereafter discovered their credit report from Experian Information Solutions, Inc. ("Experian") noted the discharged debt as "charged off".   The Debtors disputed the entry with Experian, but Experian replied that no changes needed to be made.   The Debtors then moved to reopen their Chapter 7 case to file an adversary complaint against UK Credit Union for the entry.   The Debtors' motion was granted and their complaint was filed.

The complaint alleges that UK Credit Union willfully and intentionally violated § 1681 the FCRA by reporting erroneous information and by not updating the information, and violated § 1681o of the FCRA by negligently failing to correct the discharged debt.   It is also alleged that UK Credit Union violated the discharge injunction by not correcting the information, and also violated KRS § 376.170 by engaging in an unfair, false, misleading or deceptive act or practice by continuing to report the debt as charged off.   UK Credit

Union denies any wrongdoing and accordingly filed a motion for summary judgment on April 12, 2011 (Doc. 12). During the hearing on May 9, 2011, the Debtors withdrew their KRS § 376.170 claim. After hearing the arguments of the parties, the Court took the matter under submission.

Much of UK Credit Union's argument presented in its motion and at the hearing revolves around the credit report's notation of "Date of status" of "Jan. 2008." Because this date of status was prior to the discharge, UK Credit Union argues that the charged off status was accurate. UK Credit Union also argues that it did not report any information regarding any indebtedness of the Debtor wife, Kellie Small, and that any claims she has made must be dismissed. It also argues that it did not violate the FCRA because the information in the credit report was accurate as of January, 2008. Lastly, UK Credit Union claims that the Debtors have not shown that UK Credit Union violated the discharge injunction, nor have they proven damages, because there is no evidence that the Debtors have been denied credit because of the entry on their credit report.

III.

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). It imposes certain duties on furnishers of information to credit reporting agencies. *See* 15 U.S.C. § 1681s-2. These duties include:

(1) Prohibition
 (A) Reporting information with actual knowledge of errors
  A person shall not furnish any information relating to a consumer to any reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
 . . .
(2) Duty to correct and update information
 A person who—
 (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and
 (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,
  shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and

> accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

15 U.S.C. § 1681s-2(a)(1)(A) and (a)(2).

Section 1681s-2(b) imposes a second category of duties on furnishers of information. It provides that after receiving notice of a dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the credit reporting agency pursuant to section 1681i(a)(2) . . . ;
> (C) report the results of the investigation to the credit reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other credit reporting agencies to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the credit reporting agencies].

15 U.S.C. § 1681s-2(b)(1). The duties under subsection (b) only arise after the furnisher receives notice of a dispute from a credit reporting agency; notice from a consumer does not trigger these duties. 15 U.S.C. § 1681s-2(b); *see also Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

Although the FCRA creates a private right of action for willful or negligent noncompliance with its requirements, § 1681s-2 limits this private right of action to claims arising under subsection (b). 15 U.S.C. § 1681s-2(c) (With the exception of state actions for violations, "sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder[.]"); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009). Duties imposed under subsection (a) are only enforceable by federal or state agencies. 15 U.S.C. § 1681s-2(d). This is because:

> Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. Hence, Congress limited the enforcement of the duties imposed by § 1681-2(a) to governmental bodies. But Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a [credit reporting agency] and setting up the [credit reporting agency] to receive notice of the investigation by the furnisher. *See* 15 U.S.C. § 1681i(a)(3) (allowing [credit reporting agency] to terminate reinvestigation

> of disputed item if [credit reporting agency "reasonably determines that the dispute by the consumer is frivolous or irrelevant"). With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o.

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d at 1060.

The duties imposed under § 1681s-2(b) only arise once the furnisher of information receives notice of a dispute from a credit reporting agency. Nothing in the record indicates that UK Credit Union ever received notice of the Debtors' dispute with Experian. Accordingly, because there is no private cause of action for allegations that UK Credit Union violated its duty to provide accurate information under § 1681s-2(a), and because UK Credit Union was under no duty under subsection (b), UK Credit Union is entitled to summary judgment as to the FCRA claims of the Debtors.

IV.

The discharge injunction imposed by § 524 of the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

As an initial matter, the Court notes that the Sixth Circuit has held that there is no private right of action for a violation of the discharge injunction. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000). Rather, violation of the discharge injunction exposes a creditor to potential contempt of court. *Id.* at 421 ("[T]he traditional remedy for violation of an injunction lies in contempt proceedings."). "If the contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *Id.* at 749-50. Although some courts, even within this circuit, have held that a party may pursue a claim of contempt through an adversary proceeding, s*ee Montichko v. Premium Asset Recovery Corp. (In re Motichko),* 395 B.R. 15 (Bankr. N.D. Ohio 2008), the Sixth Circuit clearly stated that the traditional manner in which it may be done is through a contested matter. *See Pertuso*, 233 F.3d at 421 (". . . the traditional remedy for violation of an injunction lies in contempt proceedings, *not in a lawsuit such as this one.*") (emphasis added). The Ninth Circuit has gone even further, holding that the *only*

manner in which an alleged violation of § 524 may be pursued is through a motion for contempt in the main case. *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186 (9th Cir. 2011). Although this matter is brought before the Court via an adversary proceeding, the Court finds that the discharge injunction claim may be dismissed on its merits rather than through any procedural errors.

Whether a contested matter or adversary proceeding, courts have generally held that for a creditor to violate the discharge injunction by reporting information on a credit report, there must be an attempt by the creditor to collect a discharged debt. *See, e.g., Mahoney v. Washington Mutual, Inc. (In re Mahoney)*, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007) ("[T]he mere reporting of credit information about a debtor *vel non* is not an 'act' to collect a discharged debt within the meaning of the statute, unless the evidence shows . . . that there is a linkage between the act of reporting and the collection or recovery of the discharged debt.").

At no point have the Debtors alleged that UK Credit Union attempted to collect the discharged debt. The Debtors have merely alleged that they "have feared that the Defendant had some improper motive for the improper credit reporting," and "the only reasonable purpose for re-reporting the debt as 'charged off' was to damage Plaintiff's credit reputation." Complaint, ¶¶ 26, 37.

Rather than making a claim that UK Credit Union attempted to collect the discharged debt, the Debtors have claimed that the mere failure of UK Credit Union to change the information was a violation of the discharge injunction. Complaint, ¶ 30 ("[U]pon receipt of the Discharge Order in this case, the Defendants were under a statutory duty to correct and update previously reported information."). The Debtors cite no authority in their complaint to support this claim, and were unable to do so at the hearing when questioned by this Court.

The truth is a creditor's failure to correct or update such information, standing alone, is not a violation of the discharge injunction. This is because the mere failure to update or remove information posted prepetition does not constitute an "act" in violation of the discharge injunction. *See In re Mahoney*, 368 B.R. at 584; *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) (no cause of action for violation of the

discharge injunction based on mere failure to remove debt from credit report); *Helms v. Wachovia Bank, N.A. (In re Helmes)*, 336 B.R. 105, 109 (Bankr. E.D. Va. 2005) (bank's inadvertent failure to remove derogatory report previously sent to credit reporting agency did not constitute violation of discharge injunction since there was no showing that allowing the report to remain was an act intended to collect a debt).

By way of example, in the case of *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65 (Bankr. D. Colo. 2000), the debtors received a discharge, but five years later discovered that a leasing company was still reporting a discharged debt as "due and owing" on the debtors' credit report. The bankruptcy court noted that the bankruptcy did not erase the debt, and that the discharge is only an injunction against attempts to collect the debt as a personal liability of the debtors. *Id.* at 70. The court held that there was nothing wrong with the leasing company reporting the debt as due and owing because, in truth, it was. *Id.* In dismissing the debtors' complaint, the court reasoned:

> The creditor was under no obligation under the Bankruptcy Code to change the way it reported the status of the loan. *False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code.* There is absolutely no showing in this case that the Defendant had manufactured a false report in order to extract payment. To the contrary . . . Defendant had apparently never made an effort to contact the Plaintiffs or to otherwise seek to collect the discharged debt.

*Id.* (emphasis added).

However, a coercive motive may be inferred if a debtor requests that a creditor correct the information, and the creditor refuses. *See, e.g., Winslow v. Salem Five Mortgage Co. (In re Winslow)*, 391 B.R. 212, 216 (Bankr. D. Me. 2008) (creditor's repeated refusal to change reporting of discharged debt as "an open account 30 days late" was coercive); *Russell v. Chase Bank USA, N.A. (In re Russell)*, 378 B.R. 735, 742-43 (Bankr. E.D.N.Y. 2007) (allegation that creditor deliberately refused to change reporting of debts as "past due or owing, charged off or charged as bad debt" in order to pressure the debtor to pay discharged debt was sufficient to withstand motion to dismiss); *In re Torres*, 367 B.R. 478, 489 (Bankr. S.D.N.Y. 2007) (inferring coercive intent sufficient to withstand motion to dismiss where creditor failed to update credit report postpetition despite being requested to do so by the debtor).

The Debtors do not allege that UK Credit Union attempted to contact the Debtors to collect on the debt.  The Debtors do not even allege that they directly requested that UK Credit Union change the entry, and UK Credit Union refused.   Indeed the Debtors did not contact UK Credit Union to dispute the entry.   Quite simply, there is no evidence that UK Credit Union has attempted to collect the discharged debt by refusing to make any changes.

Rather than contacting UK Credit Union to dispute the entry, the Debtors chose to contact Experian.  The Debtors' complaint alleges that "[t]his dispute resulted in the Credit Union indicating that no change was necessary to the entry," and references correspondence from Experian to support this claim.  However, upon review of the correspondence received by the Debtors from Experian there is no mention of UK Credit Union directing Experian that no change was necessary.  Rather, the correspondence merely states that the entry was verified as accurate, with no further information regarding how Experian verified the information.  The Debtors may presume Experian did so by contacting UK Credit Union, but nothing in the record indicates that such an event took place.  Accordingly, there is no evidence that UK Credit Union ever verified the information.

There is no evidence anywhere in the record of this proceeding to demonstrate that UK Credit Union verified the entry as accurate, or refused to make any changes when requested by the Debtors to do so.   Therefore, there Debtors have not alleged, nor have they shown, that UK Credit Union has attempted to collect the discharged debt.  UK Credit Union is not under any statutory duty to correct the information, and its failure to do so, standing alone, is not a violation of the discharge injunction.

V.

The Court finds that no evidence that Experian notified UK Credit Union of the Debtors' dispute, which precludes the Debtors' recovery under the FCRA.   There is also no evidence, nor even an allegation, that UK Credit Union attempted to collect on the discharged debt by not correcting the information it reported or by otherwise acting coercively.   Accordingly the Court concludes there are no genuine issues of material fact and, even when viewing the evidence in the light most favorable to the Debtors, UK Credit

Union is entitled to judgment as a matter of law.

Copies to:

Lesley A. Cayton, Esq.
William W. Allen, Esq.
Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



Signed By:
_Joseph M. Scott, Jr._
**Bankruptcy Judge**
Dated: Friday, May 13, 2011
(jms)